370 So.2d 497 (1979)
CENTRAL LOUISIANA ELECTRIC COMPANY, INC.
v.
LOUISIANA PUBLIC SERVICE COMMISSION et al.
No. 63028.
Supreme Court of Louisiana.
April 9, 1979.
Rehearing Denied May 21, 1979.
*499 France W. Watts, III, Watts & Cassidy, Franklinton, John Schwab, II, Cangelosi & Schwab, Baton Rouge, for intervenor-appellant Washington-St. Tammany Electric Cooperative, Inc.
Marshall B. Brinkley, Baton Rouge, LPSC, for defendant-appellee.
William O. Bonin, Landry, Watkins & Bonin, New Iberia, for plaintiff-appellee.
DIXON, Justice[*].
Central Louisiana Electric Company, Inc. filed a petition with the Louisiana Public Service Commission seeking to have the Commission order Washington-St. Tammany Electric Cooperative, Inc. to cease and desist from rendering any electric service in Pine Grove Subdivision in St. Tammany Parish, Louisiana, to remove the facilities constructed there in 1975, and to comply with the Commission's General Order of March 12, 1974 regarding promotional practices.[1] After a hearing the Commission dismissed Central Louisiana Electric's complaint and it appealed to the Nineteenth Judicial District Court, East Baton Rouge Parish; the Washington-St. Tammany Electric Cooperative intervened. After a trial at which evidence was introduced, the district court remanded the case to the Commission for further consideration,[2] R.S. 45:1194; the Commission found that the evidence presented at the trial was "inconclusive and de minimus at the best" and affirmed its original order. On appeal by Central Louisiana Electric, the district court reversed the Commission in part, enjoining the Cooperative from making further extensions of service in the subdivision, ordering the Cooperative to remove all electric lines and services previously installed in the subdivision, and affirming in all other respects the Commission's order. The Cooperative appealed to this court. La.Const.1974, Art. 4, § 21(E).
The evidence establishes that the owner and developer of Pine Grove Addition 1, Landmark Development Corporation, applied to the Cooperative on August 21,1974 for electrical service; that the subdivision of Pine Grove Addition 1 was approved and the certified plat conforming to R.S. 33:5051 was filed for record on November 15, 1974; and that a resident of Pine Grove Addition 1, Mr. Kenneth Johnson, applied to the Cooperative on December 6, 1974 for electrical service to his Lot # 74 in the middle of this new subdivision. Before this time, the Cooperative had been furnishing electrical service to customers in Brier Lake and Brier Lake Annex Subdivision which is north of Pine Grove Addition 1. On March 12, 1975 the Cooperative completed its electrical lines from Brier Lake into Pine Grove Addition 1 by running its overhead lines 788 feet west along the southern edge of Brier Lake Annex Subdivision, by continuing its overhead lines 1366 feet south to the northwest edge of Pine Grove Addition 1, and, finally, constructing underground lines 1273 feet south through Pine Grove Addition 1 to serve Mr. Johnson. From that same line, the Cooperative later served upon application a number of other residents in Pine Grove Addition 1.
On January 22, 1976 Central Louisiana Electric filed a complaint with the Commission concerning this extension into Pine Grove Addition 1 Subdivision; at the Commission hearing, February 14,1977, Central *500 Louisiana Electric presented evidence that it, too, served residents in the southern part of Pine Grove Addition 1 from its 13,200 volt three phase line running along the south side of U. S. Highway 190 which is south of Pine Grove Addition 1 and which had been there since 1957.[3] Central Louisiana Electric's complaint is not that the Cooperative violated R.S. 45:123, which prohibits extending electrical facilities to any point of connection which is within 300 feet of electrical lines of a competing utility. Although several lots in Pine Grove Addition 1 are within 300 feet of Central Louisiana Electric's lines, Central Louisiana Electric acknowledges that the point of connection in R.S. 45:123 means meter connection and not the subdivision as a whole nor the lots within the subdivision. South Louisiana Electric Cooperative Assn. v. Louisiana Public Service Commission, 309 So.2d 287 (La.1975). Instead, Central Louisiana Electric argued that the Cooperative violated the Commission's General Orders of March 12, 1974 regarding duplication of service and promotional practices.
The Commission, interpreting its own orders, dismissed Central Louisiana Electric's complaint after reciting the significant testimony from its hearing.[4] Noting that the Commission did not make any factual findings, the district court determined that it was free to review the record and make its own determinations, which was that the General Order regarding duplication of service had been violated, but that there was no evidence that the General Order regarding promotional practices had been violated. The Cooperative contends on appeal to this court that the district court erred in substituting its judgment for that of the Commission by holding that the Cooperative's services were a duplication of Central Louisiana Electric's services in Pine Grove Subdivision.
*501 It would avoid needless litigation and make for effective and expedient enforcement of the Commission's orders to require the Commission to disclose the basis of its orders. The Commission should clearly indicate that it has exercised its discretionary power by including in its decisions statements of findings and conclusions and the reasons or basis thereof. Phelps Dodge Corp. v. Labor Board, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941); Davis, Administrative Law of the Seventies, Supplementing Administrative Law Treatise, § 16:00-2, p. 385 (1977). However, while indicating that for judicial review it is preferable that the administrative agency make findings as to the central disputed issues and explain the reasons for its determination, this court has not before held that such formal findings and reasons are essential to the validity of a determination by the Commission, unless required by statute. See, Baton Rouge Water Works Co. v. Louisiana Public Service Commission, 342 So.2d 609 (La.1977) and cases cited therein.
Upon review, a Commission order should not be overturned unless it is shown to be arbitrary, capricious or abusive of its authority. One attacking a Commission order bears the burden of demonstrating that it is defective, because the order is presumed valid and the Commission's decisions will not be disturbed unless found to be clearly erroneous or unsupported by the evidence. South Louisiana Electric Cooperative Assn. v. Louisiana Public Service Commission, 367 So.2d 855 (La.1979) and cases cited therein. Further, the Commission is an expert within its own specialized fields and its interpretation and application of its own General Orders, as distinguished from legislative statutes and judicial decisions, deserve great weight, because the Commission is in the best position to apply its own General Orders. Finally, while a decision of the Commission may be deemed arbitrary unless supported by some factual evidence,[5] when there is some evidence upon which the Commission could reasonably base its determination, then the usual standard of appellate review of administrative bodies applies. Truck Service, Inc. v. Louisiana Public Service Commission, 263 La. 588, 268 So.2d 666 (1972); Hearin Tank Lines, Inc. v. Louisiana Public Service Commission, 247 La. 826, 174 So.2d 644 (1965).
In its General Order of March 12,1974 on Duplication of Electric Service, the Commission determined:
". . . that the paralleling and duplication of existing transmission or distribution lines as defined in Louisiana Revised Statutes 45:123 or the extensions of either by electric public utilities to serve customers readily accessible to like facilities of an electric public utility already providing service in the immediate area is not in the public interest, and that such practices ultimately lead to wasteful competition and unwise expenditures and investments which become a burden upon the rate payers.
It is recognized that while in some areas there is not clear line of demarcation between the service area of electric public utilities, for the purpose of this order, the service area of electric public utility is that area which, as a result of the existence of transmission and distribution *502 lines, is readily accessible by economically feasible extensions from such existing facilities. This necessarily includes customers already receiving service. . . ."
The Commission ordered in part:
"That no extension of electric transmission or distribution lines shall be made by an electric public utility that will duplicate the transmission and distribution lines (as defined in Louisiana Revised Statutes 45:123) of another like utility, nor shall extensions be made to serve customers that could be served from such electric public utility facilities already in existence in an economic and justifiable manner. . . ." (Emphasis added).
For the full text of this order, see Appendix 1 of Louisiana Power & Light Co. v. Louisiana Public Service Commission, 343 So.2d 1040 (La.1977), where this court upheld the validity of this order.
After considering this order, the district court concluded that the Cooperative had "leapfrogged a considerable distance from its Brier Lake operations to the Pine Grove Subdivision. At a relatively small cost, the same northern part of Pine Grove Subdivision could have been serviced by Cleco which had already been satisfying customer demands in the southern part of the subdivision." We cannot agree with the district court's acceptance of Central Louisiana Electric's contention that Pine Grove Addition 1 is one subdivision located on both sides of U. S. Highway 190. Central Louisiana Electric did not introduce evidence of this unity; the Cooperative did introduce a copy of the certified plat of Pine Grove Addition 1 on file with the Clerk of Court of St. Tammany Parish which shows Pine Grove Addition 1 entirely north of U. S. Highway 190 and it is Pine Grove Addition 1 that the Cooperative moved into on March 12, 1975. Further, Central Louisiana Electric failed to introduce evidence that showed when Central Louisiana Electric crossed north of U. S. Highway 190 into Pine Grove Addition 1, or that showed that Central Louisiana Electric was already in Pine Grove Addition 1 serving residents when the Cooperative moved into the subdivision. Central Louisiana Electric failed to prove either that the extension made by the Cooperative to serve Pine Grove Addition 1 residents were duplications of facilities of Central Louisiana Electric "already providing service in the immediate area," or that Central Louisiana Electric could serve in a more economical and justifiable manner the residents of Pine Grove Addition 1 from its facilities already existing on the south side of U. S. Highway 190. Consequently, we do not find the Commission's decision to dismiss Central Louisiana Electric's complaint an abuse of its authority. The burden was on Central Louisiana Electric to prove the basis of its complaint.
Central Louisiana Electric's complaint also alleged that the Cooperative violated the Commission's General Order of March 12, 1974 regarding promotional practices[6] because the Cooperative installed underground facilities in Pine Grove Addition 1 without requiring the subdivision developers or the resident customers to contribute the cost differential between overhead and the more expensive and more desirable underground facilities and without the prior approval of the Commission. Central Louisiana Electric argued that it was at a competitive disadvantage because prospective customers would be enticed away while Central Louisiana Electric observed the order. The Cooperative justified the installation of underground lines in subdivisions *503 like Pine Grove Addition 1 because it was implementing a "comprehensive underground electric service policy" for the advantages of service continuity and reliability to the seventy to one hundred fifty customers in a subdivision. At the hearing, the Cooperative filed into evidence copies of this policy and explained the policy provisions and its uniform application even in areas where there was no competition between utilities for customers. After the Commission dismissed Central Louisiana Electric's complaint, the district court found:
". . . The record does not clearly demonstrate whether the Cooperative has a well established plan providing for placing underground future extensions or whether the policy is selective depending upon other considerations involving attractiveness to developers and customers. In the absence of evidence indicating that the latter is the foregoing consideration, the Court finds that the Cooperative is not engaging in `promotional practices' and future installation of underground lines should not be prohibited."
Although the Cooperative testified that the first underground line running 1273 feet south from the northwest edge of Pine Grove Addition 1 to Lot # 74 was a 7620 volt primary line, and neither the developer nor the resident owner of Lot # 74 paid for the cost differential, the Cooperative claimed that its comprehensive policy is never to charge for primary lines in a subdivision because of the value to the Cooperative of service continuity and reliability, especially during hurricanes and ice storms. The Cooperative steadfastly maintained that it did not give away the cost differential between overhead and underground lines, because it required the individual applicants in a restricted or developed subdivision to pay a scheduled cost differential and in an unrestricted or randomly developed subdivision to contribute the service trench from the underground primary line and transformer to the meter loop. The Cooperative testified that customers in Pine Grove Addition 1 were required to contribute the service trench after Lot # 74 was serviced.
There is an absence of evidence that the Cooperative's policy for underground development is only for the purpose of enticing land developers and prospective customers away from competing utilities. Central Louisiana Electric admitted that the Cooperative had not taken away any of Central Louisiana Electric's customers in Pine Grove. We cannot find that the Commission abused its discretionary power.
Accordingly, we reverse the judgment of the district court which modified the Commission decision, reinstate the Commission decision and dismiss this suit, at the cost of plaintiff-appellee.
SUMMERS, C. J., dissents.
NOTES
[*] Judge Pike Hall, Jr., Louisiana Court of Appeal, Second Circuit, participated in this decision as an Associate Justice Ad Hoc.
[1] Central Louisiana Electric Company also sought the Commission to order the Cooperative to remove its facilities constructed north of Berry Todd Road in Sections 28 and 21 of St. Tammany Parish, but Central Louisiana Electric abandoned this issue in the district court.
[2] At the first hearing before the district court a major issue was whether the Cooperative had rendered service in violation of R.S. 45:123 to Lot # 63. It was later determined that this particular service was within 300 feet of Central Louisiana Electric's meter loop on Lot # 62 and the Cooperative discontinued service to Lot # 63.
[3] Since 1953 Central Louisiana Electric has also had a 7620 volt single phase line running north along Tranquility Road from U. S. Highway 190 to Cypress Street, then west along Cypress Street and finally south along an extension from Cypress Street to 175 feet from Lot # 33 on the northeast edge of Pine Grove Addition 1. But the focus of the instant litigation concerns service in Pine Grove Addition 1.
[4] The Commission decision was as follows:

"CENTRAL LOUISIANA ELECTRIC COMPANY, INC. versus DOCKET NO. U-12984 WASHINGTON-ST. TAMMANY ELECTRIC COOPERATIVE, INC.
In re: Alleged violation of LRS 45:123 and LPSC General Order of 3/12/74, entitled `Promotional Practices', by extending electric distribution facilities to serve Pine Grove Subdivision, St. Tammany Parish, Louisiana, and an area north of B. Todd Road, St. Tammany Parish, Louisiana.
In this proceeding, Central Louisiana Electric Company, Inc., alleges that Washington-St. Tammany Electric Co-op, Inc., has violated the provisions of LRS 45:123 and LPSC Order dated March 12, 1974, entitled `Promotional Practices' by extending service into Pine Grove Subdivision.
This matter was heard by the Commission in Regular Session held February 14, 1977.
Witnesses for CLECO testified that it serves customers in Pine Grove Subdivision, north and south of U. S. Hwy. 90, and that Lots 17, 18, 19, 20, 21, 33, 44, 43, 42, 41, 40, 46, 47, 45, 61, 64, 62, 63, and 76 are all within 300 feet of CLECO lines. He further testified that Washington-St. Tammany extended facilities into Brier Lake Subdivision and Pine Grove Subdivision.
Witnesses for Washington-St. Tammany testified that the cooperative has a comprehensive underground electric service policy. The company will allow underground service up to 200 feet to any consumer provided the customer furnishes the trench and at 90¢ per foot in excess of 200 feet. This policy has been in effect since 1972. In subdivisions built in an orderly development, the Company will extend underground at no cost. If the extension exceeds 200 feet, it will charge 90¢ per foot. If more than 150 feet of primary per consumer is required, an additional 90¢ per foot will be charged. The company will provide up to 500 feet for commercial establishments. He further testified that the Brier Lake developer contacted the cooperative for service in the subdivision and that this subdivision is to be developed in an orderly fashion.
Witnesses for Washington-St. Tammany testified that underground facilities into Pine Grove Subdivision to Lot 74 were built at no cost to the developer because it was a primary circuit (7620 volt line) and that no service by the cooperative was extended to any lot within 300 feet of the CLECO electric lines.
Accordingly, it is the opinion of the Commission that the complaint of CLECO be DISMISSED.
BY ORDER OF THE COMMISSION BATON ROUGE, LOUISIANA June 20, 1977."
[5] This court has often stated that a ruling of the Commission must be supported by some factual evidence. In Louisiana Power & Light Co. v. Louisiana Public Service Commission, 343 So.2d 1040, 1044 (La.1977), we explained:

"Further, while a ruling of the commission may be deemed arbitrary unless supported by some factual evidence, the function of the court on judicial review is not to re-weigh and re-evaluate the evidence and to substitute its judgment for that of the administrative agency constitutionally entrusted with regulation of the matter. Truck Service, Inc. v. Louisiana Public Service Com'n., 263 La. 588, 268 So.2d 666 (1972). As reiterated in Rubion Transfer and Storage Co. v. Louisiana Public Service Commission, 240 La. 440, 123 So.2d 880, 884 (1960): ` * * * Whenever the Public Service Commission, in the issuing of an order, has acted within its power, and not arbitrarily or grossly contrary to the evidence, and when no error of law has been committed, the court must not substitute its judgment for that of the commission, or consider the expediency or wisdom of the order, or say whether on like evidence the court would have made a similar ruling.'" (Emphasis added).
[6] Concerning promotional practices the Commission ordered:

"A) No public utility shall, individually, or through agents, persons, firms, or corporations acting on its behalf, directly or indirectly, grant, give, or permit any payment, rebate, preference or prize, or discrimination of any sort, including the granting or denial of any utility service, for the purpose of enticing, persuading or causing a utility subscriber or potential subscriber to deal with or take any service of such public utility or any of its affiliates in preference to the service of any other public utility, including, but not by way of limitation:
1) Waiver of any tariff provision requiring the posting or payment by any means of service charges, line extension charges, facilities charges of any sort, or deposits;
. . . . .
B) No public utility shall offer or provide services or any other thing of value to any subscriber or potential subscriber, developer, architect, builder, investor, or other person which offering of service has not been previously approved by the Louisiana Public Service Commission.
C) The term public utility shall include electric cooperatives and public utility activity or service under the jurisdiction of the Commission." (Emphasis added).
For a full text of this order, see Barras v. Louisiana Public Service Commission, 331 So.2d 842 (La.1976).