CALOGERO, Justice.
Plaintiffs, electrical contractors, their trade association, and members of the rate paying public who may or may not be affiliated with the other plaintiffs, appealed unsuccessfully to the Nineteenth Judicial District Court, Parish of East Baton Rouge, following various orders of the Louisiana Public Service Commission which had been entered in a proceeding which they had brought. They now appeal directly to this Court under the provisions of Article 6, Section 5, Louisiana Constitution of 1921.[1]
Apparently several other complainants, including the Governor’s Office of Consumer Protection, had initially joined with these plaintiffs before the Commission. The Governor’s Office of Consumer Protection did not appeal to the district court, nor thereafter appear in this litigation because, according to counsel for Louisiana Public Service Commission, they were satisfied with the orders of the Commission.
Plaintiffs originally complained to the Commission concerning certain practices of the investor owned utilities and the electric cooperatives doing business in the State of Louisiana, including their installing, free or below actual cost, electric systems and facilities on the private property of their customers, and their engaging in promotional practices involving the financing and sale of electric appliances. While plaintiffs’ petition before the Louisiana Public Service Commission mentions the free installation, its prayer does not seek relief in connection therewith. However, it was considered by the Commission in their deliberations, and is admitted to be at issue in the briefs of the Commission.
The Commission thereafter entered an order (of Dec. 18, 1973), a clarification of that order (dated 2/13/74) and a general order implementing the Dec. 18, 1973 order (dated March 12, 1974).
The pertinent portions of the orders are as follows:
December 18, 1973: Order—in re: Promotional Practices and Electrical Work on Private Property by Electric Utilities. The commission ruled as follows :
“The Commission finds that it lacks jurisdiction to prohibit electric utilities subject to its jurisdiction from constructing electric facilities on private *844 property, unless the construction is a promotional practice that will be a burden to the general rate payer. The Commission has instructed the Staff to prepare a General Order that will direct all utilities subject to the Commission’s jurisdiction to cease all promotional practices offered to customers to the detriment of the general rate payer. It is therefore
“ORDERED, that this proceeding be and hereby is DISMISSED for lack of jurisdiction.”
February 13, 1974: Clarification of Order of December 18, 1973. This clarification stated in part:
“On December 8, 1973, this Commission issued an Order . dismissing the complaint . . . for lack of jurisdiction.
“Exceptions of jurisdiction and standing to sue were filed by respondents and the Order of the Commission of December 18, 1973 maintained those exceptions of jurisdiction and standing to sue.
“It was and is the holding of this Commission that the complainants are not entities subject to the regulatory authority of this Commission and the Commission does not have jurisdiction to entertain their claim for the exclusive right to perform any work which involves providing electrical service to customers. The extension of electrical service to the improvements of customers is a public utility function and the responsibility of the electrical public utilities subject to the authority and jurisdiction of this Commission.”
March 12, 1974: General Order implementing the order issued by the commission on December 18, 1973. This general order provided:
It is the opinion of the Commission that in order to effect economies in the services provided by public utilities and thus keep rates as low as possible, promotional practices exclusive of advertising the services, rates and goodwill of the public utility should be eliminated. Accordingly, it is
ORDERED that:
A) No public utility shall, individually, or through agents, persons, firms, or corporations acting on its behalf, directly or indirectly, grant, give, or permit any payment, rebate, preference or prize, or discrimination of any sort, including the granting or denial of any utility service, for the purpose of enticing, persuading or causing a utility subscriber or potential subscriber to deal with or take any service of such public utility or any of its affiliates in preference to the service of any other public utility, including, but not by way of limitation:
1) Waiver of any tariff provision requiring the posting or payment by any means of service charges, line extension charges, facilities charges of any sort, or deposits;
2) Purchasing from any person property, goods, or services of any sort;
3) Performing or causing to be performed services of any sort.
B) No public utility shall offer or provide services or any other thing of value to any subscriber or potential subscriber, developer, architect, builder, investor, or other person which offering of service has not been previously approved by the Louisiana Public Service Commission.
C) The term public utility shall include electric cooperatives and public utility activity or service under the jurisdiction of the Commission.
Plaintiffs’ appeal to the district court, filed on April 4, 1974, was from these three orders of the Louisiana Public Service Commission. Several interven- or/respondents, by exception to the *845 jurisdiction of the district court re-urged here, complain that because the appeal was not filed within 90 days of the December 18, 1973 order, it was not timely and the petition should therefore have been dismissed. This contention was based upon the constitutional provision contained in Article VI, Section 5, paragraph 2 of the Louisiana Constitution of 1921 (which was in effect at the time this litigation commenced). This provision reads as follows:
“The orders of the Commission shall be enforced by the imposition of penalties as hereinafter provided, and any party in interest may appeal from orders and decrees of the Commission to the courts by filing suit, within ninety days from the date of the Commission’s order, and not thereafter, against the Commission at its domicile.”
In the case of Teche Lines, Inc. v. Louisiana Public Service Commission, 203 La. 604, 14 So.2d 460 (1943), this Court declared invalid a rule of the Public Service Commission which attempted to extend the appeal period. The rule allowed appeals to be taken within ninety days of a denial of rehearing. Under the same provision of the Constitution which we are considering here, the Court held that the rule violated a clear constitutional provision that appeals must be applied for within ninety days of the order “and not thereafter.” See also Texas and Pacific Ry. Co. v. Louisiana Public Service Commission, 201 La. 853, 10 So.2d 641 (1942).
In Groendyke Transport, Inc. v. Louisiana Public Service Commission, 304 So.2d 340 (La.1974), this Court with reference to the same constitutional provision held as follows:
“This constitutional provision is clear and unequivocal. This case is determined by counting off ninety days on the calendar from date of the commission’s order. The appellant did not file his suit within the ninety day period, and, therefore, the appeal was not timely. The order of the Public Service Commission became final at the expiration of the ninety day period. The appeal must be dismissed.”
While the contention that the plaintiffs’ appeal in the case before us was not timely might arguably be supported by the jurisprudence discussed above, we conclude that this case is distinguishable, and that the appeal was timely. Here there were three orders issued sequentially, which the Commission itself, in brief before this Court, asserts “should be read together” in order to determine their full import. The first order upon which the defendant would have us rely as commencing the 90 day appeal period, itself indicated that a general order to be prepared by its staff would follow. Then the Commission issued the clarification order of February 13, 1974 and there followed, as promised, the general order of March 12, 1974: The appeal to the district court was not filed within 90 days of the December 18, 1973 order, but it was filed less than 90 days after both the clarification order and the general order. We treat the initial order, the clarification, and the general order as a single Commission disposition for purposes of both timeliness and the merits, and conclude that the appeal therefore was timely.
We turn now to the merit of plaintiffs’ contention, that the trial court erred in its judgment dismissing their suit. They had' contended in the district court that the Commission erred in dismissing their complaint for lack of jurisdiction, rather than entertaining and deciding the merits of their complaint. They are purportedly only seeking to have this litigation remanded or returned to the district court for treatment of their complaint on the merits.
Counsel for the Commission argues that all of the relief sought by plaintiffs which was within the power of the Commission has been given and that the language employed in the order and clarification order *846 concerning lack of Commission jurisdiction and/or lack of plaintiffs’ standing to sue was a perhaps inarticulate way of saying that the Commission lacked the power (1) to go beyond barring promotional practices on the part of defendants which burden the general rate payer, and (2) to grant complainants an exclusive work territory by ordering electric utilities to stop any and all construction, free or otherwise, at the subscriber’s property line.
We believe the Commission’s position is well taken. As the district judge said:
“The Court has quoted the above at length because the language used by the Commission has apparently caused considerable difficulty, particularly with respect to the use of legal terminology in phrases such as ‘dismissal of the complaint’, ‘standing to sue’, ‘lack of jurisdiction’ and ‘maintaining the exceptions.’
“Part of the difficulty arises from the fact that petitioners were apparently seeking relief, on the one hand, as business competitors of the public utilities, and, on the other hand, as members of the general rate-paying public. The failure of the Commission to particularize these distinctions and the somewhat imprecise use of the procedural legal terms in its orders added to the difficulty and caused the ambiguity. The substance of the orders, however, clearly shows that the Commission recognized the differences in the claims and disposed of them separately.

“Insofar as the petitioners appeared as members of the general rate-paying public and asserted that certain promotional practices adversely affected their interests, the Commission affirmatively exercised its jurisdiction over this claim. The General Order of March 12, 1974, provided for the elimination of such promotional practices and prohibited the offering of services without prior approval of the Commission.
“However, insofar as the petitioners appeared as business competitors of the public utilities in the field of construction and installation of electrical facilities on private property, the “Clarification” of February 13, 1974, stated the Commission’s position that such activities were proper public utility functions and would not be prohibited simply because economic competition with the private sector resulted therefrom.”
The Commission’s focus in their order and clarifying order principally upon plaintiffs’ seeking an exclusive work territory is understandable in light of the manner in which the petition before them was drawn. As indicated earlier in the opinion the prayer of that petition does not seek to bar free or below actual cost electric systems and facilities on private property by the utilities. Rather it sought principally to enjoin the utilities from “designing, installing, maintaining or otherwise investing in electric equipment and installations on the private property of its customers beyond the private property line . . . . ”
In any event we read the Commission’s order, clarification order and general order as did the trial judge. The Commission entertained plaintiffs’ complaint, afforded them an extensive hearing and ruled in effect that free and below actual cost electric systems and facilities on private property installed by the utilities (to the detriment of the general rate payer) should cease, when it directed in the 12/13/73 order that their staff “prepare a General Order that will direct all utilities ... to cease all promotional practices offered to customers to the detriment of the general rate payer,” and when they issued the general order on March 12, 1974 directing that
“A) No public utility shall . . . directly or indirectly, grant, give or permit any payment, rebate, preference or prize, or discrimination of any sort, including the granting or denial of any utility service, for the purpose of entic *847 ing, persuading or causing a utility subscriber or potential subscriber to deal with or take any service of such public utility . . .
“B) No public utility shall offer or provide services or any other thing of value to any subscriber or potential subscriber, developer, architect, builder, investor, or other person which offering of service has not been previously approved by the Louisiana Public Service Commission.”
The purpose of this general order was to implement the commission’s ruling in the December 18, 1973 order that they had authority to prohibit utilities from constructing electric facilities on private property when “the construction is a promotional practice that will be a burden to the general rate payer.” The language of the general order prohibiting public utilities from offering “rebates, preference or prize, or discrimination of any sort” for the purpose of persuading or enticing persons or corporations to engage the services of their company rather than the services of any other company, we therefore read to be the Commission’s definition of “promotional practices that will be a burden to the general rate payer.” The broad language of the order includes within its terms a prohibition of the alleged practices of public utilities in which they provide free or below cost services on private property to developers or engage in the below cost sale and financing of electric appliances.
Furthermore the possibly inarticulate “jurisdiction” language of the order and clarifying order effectively declared, and correctly so, that the Commission may not legally prevent electric utilities from constructing electric facilities on private property, and, having no regulatory authority over electrical contractors, nor jurisdiction, as such, over work by them on private property, may not by the effect of barring electric utilities grant electric contractors (by default) the exclusive right to perform any work which involves providing electric systems and facilities on private property.
If plaintiffs have any complaints that one or more electric utilities are in fact providing or continuing to provide free or below actual cost electric systems and facilities on the private property of one or more customers (notwithstanding the Commission orders) they have the right to institute anew complaints of this nature, and the Commission surely has jurisdiction to hear them out and take appropriate action. The orders of the Commission complained of in this litigation do not (contrary to plaintiff’s assertions herein) bar such future action by these plaintiffs in whatever capacity (rate payers or otherwise) notwithstanding the portions of the controversial orders which declared the Commission without jurisdiction and plaintiff without standing to sue. This language by the Commission was merely part of the order which concluded the complaint before them at the time.
For the foregoing reasons the judgment of the district court dismissing plaintiffs’ petition is affirmed at plaintiffs’ cost.
Affirmed.
SUMMERS, J., concurs and will assign reasons.

. The sole defendant herein is the Louisiana Public Service Commission. Intervenors are sixteen electric cooperatives, five electric companies and one labor union who align themselves with defendant. The intervenors excluding the labor union (I.B.E.W. Local 2286) were the companies whose practices and procedures were complained of by plaintiffs before Louisiana Public Service Commission. Members of that Local (2286) apparently work for some or all of the companies. I.B.E.W. Locals 130, 194, 446, 576, 861, 901, 995 and 1077 intervened on behalf of the plaintiffs. Members of these locals apparently work for various electrical contractors.