392 So.2d 658 (1980)
LOUISIANA POWER & LIGHT COMPANY
v.
LOUISIANA PUBLIC SERVICE COMMISSION et al.
No. 80-CA-1984.
Supreme Court of Louisiana.
December 15, 1980.
Rehearing Denied January 26, 1981.
*659 Andrew P. Carter, Eugene G. Taggert, J. Wayne Anderson, Monroe & Lemann, New Orleans, for plaintiff-appellant.
Marshall B. Brinkley, Baton Rouge, for defendants-appellees.
Stanwood R. Duval, Jr., Duval, Funderburk, Sundbery & Lovell, Houma, for intervenor-appellee.
DIXON, Chief Justice.
This case involves a territorial dispute between Louisiana Power & Light Company and South Louisiana Electric Cooperative Association. At the request of the developer of a subdivision, SLECA built an electric distribution line to service that subdivision. LP&L filed a complaint with the Louisiana Public Service Commission alleging that SLECA's action was unlawful, and requesting that SLECA be ordered to remove the line. The Commission dismissed LP&L's complaint, and the district court affirmed the Commission's order. LP&L now appeals to this court. La.Const. art. IV, § 21(E); R.S. 45:1192. We affirm.
The subdivision at issue, called the Medical Services Complex, is situated in Terrebonne Parish, west of Louisiana Highway 57, south of Industrial Boulevard, and east of Denley Road. The subdivision consists of twenty-one unimproved lots, ten of which lie north of Picone Road (Block 1) and eleven of which lie south of Picone Road (Block 2).[1] To service the subdivision, SLECA tapped from its existing line on Denley Road, ran an overhead distribution line down the rear lot line of Block 2, installed an underground cable across Picone Road, then ran an overhead line up the rear lot line of Block 1. This configuration was chosen to accommodate the developer.
LP&L's argument is that it ought to have the exclusive right to service the subdivision, contending that SLECA's extension of its own line into the subdivision was unlawful. The Commission disagreed, and held *660 that the developer had the right to choose between the two utilities.[2]
Specifically, LP&L contends that the Commission erred in failing to find SLECA's actions to be illegal in three respects. LP&L alleges: first, that SLECA violated a general order of the Commission by "mak[ing] line extensions that duplicate, parallel and preempt existing LP&L facilities;" second, that SLECA violated that same order by "serv[ing] an area that could be served in a much more economical and justifiable manner from facilities of LP&L;" and, third, that SLECA "engag[ed] in a promotional practice that is specifically proscribed" by another general order.
Orders of the Public Service Commission are entitled to great weight and will not be overturned unless shown to be arbitrary, capricious or abusive of the Commission's authority. When there is some evidence upon which the Commission could have reasonably based its determination, an order of the Public Service Commission will not be upset; the burden of demonstrating that an order is defective is on the party attacking it. See, e. g., Central Louisiana Electric Co. v. Louisiana Public Service Commission, 370 So.2d 497 (La.1979).

The Legal Background
Prior to March 12, 1974, the only way in which a utility could claim that it possessed the exclusive right to serve a customer was by invoking R.S. 45:123. That statute provides in part:
"No electric public utility shall construct or extend its facilities, or furnish, or offer to furnish electric service to any point of connection which at the time of the proposed construction, extension, or service is being served by, or which is not being served but is located within 300 feet of an electric line of another electric public utility, except with the consent in writing of such other electric public utility; provided, however, that nothing contained herein shall preclude (a) any electric public utility from extending service to an applicant for service at an unserved point of connection located within 300 feet of an existing electric line of such electric public utility, unless (i) such line was not in operation on April 1, 1970 and (ii) the point of connection is located within 300 feet of an existing electric line, of another electric public utility, which line was in operation on said date, or (b) any electric public utility from extending service to its own property, or to another electric public utility for resale; ..."
This version of the statute was enacted in 1970, and is much more restrictive in the grant of exclusive right to serve than was it predecessor. South Louisiana Electric Cooperative Assn. v. Louisiana Public Service Commission, 309 So.2d 287, 289 (La.1975). The general rule embodied in R.S. 45:123 is that no utility can furnish services to a point of connection that is within 300 feet of another company's electric line. Thus, a utility has the exclusive right to service all points of connection located within 300 feet of its electric lines. The term "point of *661 connection" was defined by this court as actual meter connection. South Louisiana Electric Cooperative Assn. v. Louisiana Public Service Commission, supra. Thus, unless an actual meter connection is within 300 feet from a utility's electric line, R.S. 45:123 does not confer upon that utility the exclusive right to serve.
The narrow scope of the exclusive right afforded to a utility by R.S. 45:123 can be seen from the facts of the case cited above. To service a subdivision, SLECA extended an electric line approximately three miles. By contrast, LP&L had an existing line located 291.4 feet from the property line. This court upheld SLECA's right to service the subdivision, since the actual meter connections would be located more than 300 feet from LP&L's existing line. In order to halt such uneconomic and wasteful practices, the Public Service Commission promulgated its General Order of March 12, 1974, entitled "Duplication of Electric Service."[3] This order contains a broader proscription than that embodied in R.S. 45:123, but the order is not so broad as to vitiate customer choice in every instance.

Duplication of Electric Service
To serve this subdivision, a transmission line was to have been placed along the rear lot line of each block. Neither utility had such an existing line. The cost of installing these transmission lines would have been the same for each utility company. Similarly, the cost of tapping for Block 2's transmission line would be the same for either utility. LP&L's nearest existing line was located along Highway 57, a distance of 104 feet from the lot nearest to that line. By contrast, SLECA's existing line along Denley Road is 84 feet from the lot nearest it. There is no duplication whatsoever, no difference in cost between the two utilities; LP&L was not entitled to the exclusive right to serve Block 2.
Block 1 presents a more difficult situation. As mentioned above, SLECA built an underground line traversing Picone Road in order to service Block 1. LP&L contends that, had it serviced the subdivision, there would been no need to construct the underground line since LP&L already had lines located between Block 1 and Industrial Boulevard from which it could have tapped for $1500.
LP&L further contends that the cost of constructing that underground line was $11000. This amount was a cost estimate by an LP&L employee who stated that this is what a comparable three phase underground line would have cost LP&L. An employee of SLECA testified that the line used was single phase, and not three phase, which is more expensive. The record before us does not show SLECA's cost of constructing the extension. Therefore, we cannot find that the Public Service Commission arbitrarily rejected LP&L's contention that it could have serviced the area more economically. The burden of proof was on LP&L to prove its contentions.[4]
LP&L makes the further argument that SLECA duplicated LP&L's existing facilities because LP&L could have served Block 1 without constructing the underground line. As mentioned above, the underground line was chosen to accommodate the developer. SLECA could have serviced the block by extending its line along Denley Road and crossing Denley as it had done for Block 2. It is doubtful that LP&L's proposed method would have satisfied the developer. Therefore, we do not believe that *662 the Public Service Commission erred because it failed to hold that SLECA's lines were duplicative of LP&L's existing facilities.

Promotional Practices
A SLECA employee testified that streetlight standards were installed in the subdivision at no cost to the developer. The cost to SLECA was $2365.45. That employee testified that SLECA has not charged any developers within its territory for streetlight standards since 1971, the inception of this general policy. LP&L contends that this practice constitutes a promotional practice proscribed by the General Order of March 12, 1974. That order prohibits a public utility from giving a preference or prize "for the purpose of enticing" someone to deal with that utility "in preference to the service of any other public utility."
In Central Louisiana Electric Co. v. Louisiana Public Service Commission, supra, this court was confronted with the issue of whether a utility violated this order by installing underground facilities, yet charging customers the price of less expensive overhead facilities. This court affirmed the Public Service Commission's conclusion that no violation of the order occurred. The evidence in that case revealed that this was part of a comprehensive service policy, and that the policy was applied uniformly, even in areas where there was no competition for customers. We find the same type of policy to exist in the present case. Thus, the Public Service Commission did not err in failing to hold that SLECA violated the General Order.
For the foregoing reasons, the judgments of the Louisiana Public Service Commission and the district court are affirmed. Costs of this appeal are to be paid by the appellant.
NOTES
[1] Lot 10 of Block 1 and Lots 10 and 11 of Block 2 are not at issue in this litigation.
[2] LP&L's complaint was dismissed in Order No. 13803, dated May 1, 1979, which provides:

"In this proceeding, Louisiana Power and Light Company (`LP&L') alleges that South Louisiana Electric Cooperative Association (`SLECA') has violated the provisions of LRS 45:123 and LPSC General Orders dated March 12, 1974, entitled `Promotional Practices' and `Duplication of Electric Service' by attempting to provide electric service to the Medical Services Complex Subdivision, Louisiana Highway 57 and Picone Road, Terrebonne Parish, Louisiana.
This matter was tried by Hearing Examiner in Baton Rouge, Louisiana on September 11, 1978, and taken under advisement.
Final consideration was given to this matter at Open Session of this Commission on October 16, 1978, which was held in Baton Rouge, Louisiana, and the Commission finds after consideration of the evidence and exhibits in this case, including the exception to jurisdiction filed by SLECA, that both companies have electric lines within 300 feet of some portion of the subdivision, and that the customer has chosen SLECA to provide the service. It is the opinion of this Commission that this is a case of customerchoice which is allowed under LRS 45:123. It is, therefore,
ORDERED that this matter be dismissed."
[3] This order is reproduced in Appendix 1 of Louisiana Power & Light Co. v. Louisiana Public Service Commission, 343 So.2d 1040, 1046 (La.1977).
[4] LP&L contended to this court in oral argument that it had attempted to obtain SLECA's actual cost figures via a subpoena duces tecum, but that SLECA did not bring the figures to the hearing. We note that the petition filed with the Public Service Commission by LP&L does not suggest that the construction of the underground line is conduct complained of by LP&L. Further, the record indicates that the subpoena requested that SLECA furnish "the cost of streetlight standards and facilities." Because of the lack of notice in the petition and the ambiguity in the subpoena, it is understandable that SLECA did nor furnish LP&L with its cost figures for construction of the underground line.