441 So.2d 1212 (1983)
DIXIE ELECTRIC MEMBERSHIP CORPORATION
v.
LOUISIANA PUBLIC SERVICE COMMISSION.
No. 83-CA-1197.
Supreme Court of Louisiana.
November 28, 1983.
Rehearing Denied January 6, 1984.
*1213 John Schwab, Baton Rouge, for plaintiff-appellant.
Marshall B. Brinkley, Baton Rouge, for defendant-appellee.
Eugene R. Groves, Baton Rouge, for intervenor-appellee.
BLANCHE, Justice.
In this companion case to Dixie Electric Membership Corporation v. Louisiana Public Service Commission, 441 So.2d 1208 (La. 1983), ("Round Oak Subdivision"), decided this day, Dixie Electric Membership Corporation had, at the request of the developer, built an electric distribution line to service Lakeland Acres Subdivision in Livingston Parish, Louisiana. Gulf States Utilities Company filed a complaint with the Louisiana Public Service Commission alleging that Dixie's action was unlawful, requesting that Dixie be ordered to remove their line, and that Gulf States be awarded the exclusive right to service the subdivision. The Commission upheld Gulf State's complaint and awarded Gulf States the right to service Lakeland Acres Subdivision. On the basis of new evidence submitted, the district court remanded the case to the Commission for reconsideration. La.R.S. 45:1194. The Commission affirmed its original order and the district court affirmed the Commission's order. Dixie now appeals to this court. La. Const. art. IV, § 21(E); La.R.S. 45:1192.
Lakeland Acres Subdivision is located approximately 600 feet south of Interstate 12 in Livingston Parish, Louisiana, and approximately 280 feet east of South Range Avenue (La. Hwy. 3002). Gulf States maintains a high voltage transmission line that comes within 300 feet of at least nineteen lots on the south part of the subdivision. Gulf States also maintains a single-phase distribution line along South Range Avenue. This line, at one time, provided single-phase service to an old camp which was located on land which is now designated as Lot 1 of the First Filing of the subdivision. The camp has been removed, electric service has been disconnected, and the line is no longer energized. Dixie maintains a three-phase distribution line along Interstate 12 approximately 600 feet north of the subdivision. Thus, at the time that Dixie entered into an agreement to provide electric distribution service to this subdivision, no other utility had electric distribution service to that area.
On May 11, 1977, Dixie entered into an agreement with the developer of the subdivision whereby Dixie would provide underground electric distribution service to the subdivision. The agreement contained provisions whereby the developer would not be charged for the increased costs of underground, as opposed to overhead, service.
The complaint filed by Gulf States in this matter alleges the same three infractions on the part of Dixie as are contained in the "Round Oak Subdivision" complaint; first, that Dixie violated General Order of March 12, 1974, "In re: Promotional Practices" by offering underground service at no cost above that for overhead service; second, that Dixie's action was in violation of the "300 foot rule" of La.R.S. 45:123; and third, that Dixie violated General Order of March 12, 1974, "Duplication of Electric Service", by providing electric distribution service where Gulf States could do so more economically. Because we find that Gulf States failed to carry its burden of proof before the Commission, we reverse.
The agreement between Dixie and the developer of the subdivision was signed on May 11, 1977. By stipulation of both parties before the Commission, it was Dixie's uniform policy at that time to provide such underground services to all customers, regardless of the existence of any competing utility in the area. As such, the General Rule of March 12, 1974, "In re: Promotional Practices", does not apply to this case and may not be relied upon by either the Commission or Gulf States. See: Dixie Electric Membership Corporation v. Louisiana Public Service Commission, 441 So.2d 1208 (La.1983); Louisiana Power and Light Company v. Louisiana Public Service Commission, 392 So.2d 658 (La.1980); Central *1214 Louisiana Electric Company, Inc. v. Louisiana Public Service Commission, 370 So.2d 497 (La.1979).
As in the "Round Oak Subdivision" case, supra, Gulf States may not rely upon La.R.S. 45:123 to contend that they are entitled to service the entire subdivision. This court interpreted the language of La. R.S. 45:123 restrictively in South Louisiana Electric Cooperative Association v. Louisiana Public Service Commission, 309 So.2d 287 (La.1975). Therein, we found that the language "point of connection" in La.R.S. 45:123 meant "meter connection" and not the whole subdivision. Thus, while La.R.S. 45:123 restricts Dixie from providing service to any "meter connection" within 300 feet of Gulf States' high voltage transmission line,[1] Dixie would be legally entitled to provide service to any "meter connection" located more than 300 feet from any electric line operated by Gulf States, whether or not a part of the lot on which that connection is located within 300 feet of the line.
Gulf States contends that, because some lots fall completely within 300 feet of their transmission line, Dixie may not service these lots. Gulf States argues that such a situation results in two different utilities servicing different parts of the same subdivision. Gulf States then cites Commission Order No. U-12749, Dixie Electric Membership Corporation v. Gulf States Utilities Company (Woodland Ridge Subdivision, First Filing), to argue that the Commission favors service within a subdivision by only one utility. The use of such an argument to contend that Gulf States service the entire subdivision because it maintains a transmission line within 300 feet of a few of the subdivision's lots is inconsistent with our ruling in South Louisiana Electric Cooperative Association v. Louisiana Public Service Commission, supra, and completely controverts our interpretation of La.R.S. 45:123. The argument put forward by Gulf States on this issue is without merit..
Thus, the major issue involved in this case is whether or not Gulf States, as complainant before the Commission, carried its burden of proof of showing that Gulf States could more economically service Lakelake Acres Subdivision than could Dixie. Central Louisiana Electric Company, Inc. v. Louisiana Public Service Commission, 370 So.2d 497, 505 (La.1979).
The testimony before the Commission was to the effect that, in order to service the entire subdivision, including sewer lift-stations and future planned expansion, three-phase service would be required. Once within the subdivision boundaries, the cost of service to each utility would be the same. Under the Commission's General Order of March 12,1974, "Duplication of Electric Service", the utility that could most economically service the subdivision should be allowed to do so. As costs within the subdivision boundaries would be the same, Gulf States had the burden of proof before the Commission of showing that they could get service to the subdivision boundary at less expense than could Dixie.
Dixie put forth evidence before the Commission showing that its costs to extend three-phase service to the subdivision from the north was $2,686.02 while the estimated cost for Gulf States to extend service from a three-phase line to the north would be $2,898.36. Neither figure includes the cost of any servitudes required to extend the services to the subdivision boundaries.
The Commission's General Order of March 12, 1974, "Duplication of Electric Service", states, in pertinent part:
It is the opinion of this Commission that in order to effect economies in the service of electricity, and, thus, keep rates therefore within reasonable bounds, uneconomic and wasteful practices should be prohibited. It is determined that the paralleling and duplication of existing transmission or distribution lines as *1215 defined in Louisiana Revised Statutes 45:123 or the extensions of either by electric public utilities to serve customers readily accessible to like facilities of an electric public utility already providing service in the immediate area is not in the public interest, and that such practices ultimately lead to wasteful competition and unwise expenditures and investments which become a burden upon the rate payers.
It is recognized that while in some areas there is not clear line of demarcation between the service area of electric public utilities, for the purpose of this order, the service area of electric public utility is that area which, as a result of the existence of transmission and distribution lines, is readily accessible by economically feasible extensions from such existing facilities. (Emphasis added.)

* * * * * *
Gulf States argues that since the time that Dixie extended their service, Gulf States has underbuilt its transmission line to the south and the single-phase line along South Range Avenue has been converted to a three-phase line. Such an action by Gulf States tacitly acknowledges the facts adduced before the Commission to the effect that single-phase service is inadequate to serve the entire subdivision plus the necessary sewer lift-station. Thus, Gulf States, at the time of their complaint was neither servicing the area, as their single-phase line to the old camp had been disconnected and de-energized, nor did they have adequate services in the area. As such, the Commission's General Order of March 12,1974 may not be relied upon by Gulf States absent a showing that the improvements and upgrading of their existing lines to the south was more economical than Dixie's extension from the north.
Gulf States contends that the extension of three-phase service from South Range Avenue east to the subdivision boundary is more economical than Dixie's extension from the north. Gulf States, however, put forth no evidence at the hearing before the Commission to support its contentions. There is no evidence of the cost to Gulf States of converting the single-phase line along South Range Avenue to three-phase service. There is no evidence of the cost that Gulf States incurred when it underbuilt the transmission line to provide distribution service from that line. Finally, there is no evidence of the cost to Gulf States of extending the three-phase service from South Range Avenue to the subdivision boundary. In short, there was no evidence adduced before the Commission by Gulf States upon which the Commission could base its decision to award to Gulf States the right to serve Lakeland Acres Subdivision. Thus, Dixie has met its burden as the party attacking an order of the Commission before this court of showing Order No. U-14101 of the Louisiana Public Service Commission to be arbitrary, capricious, and abusive of their authority. Central Louisiana Electric Company, Inc. v. Louisiana Public Service Commission, supra.

DECREE
For the reasons assigned, the judgment of the district court is reversed and set aside; Order No. U-14101 of the Louisiana Public Service Commission is annulled; the claims of Gulf States Utilities Company are rejected at its cost.
REVERSED.
NOTES
[1] La.R.S. 45:123 states, in pertinent part, that: "... an `electric line' is a line constructed and operated for the transmission and/or distribution of electricity ..." (Emphasis added). Thus, a line used solely for transmission of electricity falls within the language of La.R.S. 45:123.