441 So.2d 1208 (1983)
DIXIE ELECTRIC MEMBERSHIP CORPORATION
v.
LOUISIANA PUBLIC SERVICE COMMISSION.
No. 83-CA-1196.
Supreme Court of Louisiana.
November 28, 1983.
*1209 John Schwab, Baton Rouge, for plaintiff-appellant.
Marshall B. Brinkley, Eugene R. Groves, Baton Rouge, for defendant-appellee.
BLANCHE, Justice.
This case and its companion case, Dixie Electric Membership Corporation v. Louisiana Public Service Commission, 441 So.2d 1212 (La.1983), involve territorial disputes between Dixie Electric Membership Corporation (Dixie) and Gulf States Utilities Company (Gulf States). In the instant case, at the request of the developer, Dixie built an electric distribution line to service Round Oak Subdivision in East Baton Rouge Parish, Louisiana. Gulf States filed a complaint with the Louisiana Public Service Commission (Commission) alleging that Dixie's action was unlawful, requesting that Dixie be ordered to remove the line, and requesting that Gulf States be ordered the exclusive right to service the subdivision. The Commission upheld Gulf States' complaint and awarded Gulf States the exclusive right to service the entire subdivision. On the basis of new evidence submitted, the district court remanded the case to the Commission for reconsideration. La. R.S. 45:1194. The Commission affirmed its original order and the district court affirmed the Commission's order. Dixie now appeals to this court. La. Const, art. IV, § 21(E); La.R.S. 45:1192.
Round Oak Subdivision adjoins Jefferson Highway on its southwest corner. The subdivision's north boundary is located approximately 663 feet south of Doyle Road in East Baton Rouge Parish. On June 7,1976, Dixie entered into an agreement with the developer of the subdivision to provide underground electric distribution service. According to the contract, the developer would not be charged for the increased costs of underground, as opposed to overhead, service. At the time, Dixie maintained a three phase distribution line along Doyle Road, approximately 663 feet north of the subdivision. Gulf States had a three-phase distribution line along Jefferson Highway, across the street from the southwest corner of the subdivision. Additionally, Gulf States had run a single-phase line across Jefferson Highway prior to 1963 to service a house which was located on land now within the boundary of the subdivision. Service to this house was disconnected at the owner's request in May of 1978, however the line remains energized. The testimony of both parties reflects that three-phase service is needed to service the entire subdivision.
Gulf States' argument to the Commission protesting Dixie's action was three-fold. Gulf States contended: first, that Dixie violated a general order of the Commission by extending services when Gulf States had "electric distribution facilities in the immediate vicinity of Round Oak Subdivision which would allow the most economic extension" of electric services to that area; second, that Dixie's action was "an uneconomic and duplicative construction of facilities in violation of La.R.S. 45:123;" and third, that Dixie engaged in a promotional practice that is proscribed by a general order of the Commission when Dixie did not charge the developer for the installation costs of the underground line. The Commission agreed with Gulf States and ordered that Gulf States service Round Oak Subdivision.
*1210 Under our ruling in South Louisiana Electric Cooperative Association v. Louisiana Public Service Commission, 309 So.2d 287 (La.1975), Gulf States may not claim the exclusive right to provide services to the entire subdivision based upon La.R.S. 45:123 by contending that they operate an electric line within 300 feet of a small portion of that subdivision.[1] Thus, any reliance by the Commission on La.R.S. 45:123 in their decision is misplaced. La.R.S. 45:123 would, however, prohibit Dixie from servicing points of connection within 300 feet of existing Gulf States electric lines such as the three-phase distribution line along Jefferson Highway and any currently "operating"[2] single-phase lines located on or near subdivision property.
The claims of Gulf States with respect to alleged promotional practices of Dixie are equally without merit. On March 12, 1974, the Commission issued General Order "In re: Promotional Practices" which implemented an order issued by the Commission on December 18, 1973. This general order prohibits a public utility from giving a preference or prize "for the purpose of enticing" someone to deal with that utility in preference to the service of any other public utility."[3] This court has held that the above general order is not applicable to an action which is a part of a comprehensive service policy when that policy is applied uniformly, even in areas where there is no competition for customers. Louisiana Power and Light Company v. Louisiana Public Service Commission, 392 So.2d 658 (La. 1980); Central Louisiana Electric Company, Inc. v. Louisiana Public Service Commission, 370 So.2d 497 (La.1979).
The parties in this case had entered into a stipulation before the Commission whereby, in part, each agreed that:

* * * * * *
Number 4. Prior to June, 1977, Dixie Electric Membership Corporation did not charge developers of subdivisions for the difference between the anticipated cost of installation and maintenance of underground electric service facilities and the anticipated cost of installation and maintenance of overhead electric facilities.
Number 5. Since June, 1977, Dixie Electric Membership Corporation's policy has been to charge all developers of subdivisions making initial inquiries after that date for the difference between the anticipated cost of installation and maintenance of underground electric service facilities and the anticipated cost of overhead electric facilities.
* * * * * *
The agreement between Dixie and the subdivision developer was signed on June 7, 1976, during which time the uniform policy of Dixie was to offer the underground service at no additional cost. Thus, the General Order of March 12, 1974, "In re: Promotional Practices", does not apply to this case.
In general, however, an order of the Public Service Commission should not be overturned on review unless it is shown to be arbitrary, capricious or abusive of its authority. The burden of showing that an order is arbitrary, capricious or abusive of the Commission's authority is on the party attacking that order. Central Louisiana Electric Company, Inc. v. Louisiana Public Service Commission, 370 So.2d 497 (La. *1211 1979); Louisiana Power and Light Company v. Louisiana Public Service Commission, 392 So.2d 658 (La.1980). The Commission is an expert within its own specialized field and its interpretation and application of its own General Orders, as distinguished from legislative statutes and judicial decisions deserve great weight, because the Commission is in the best position to apply its own General Orders. Central Louisiana Electric Company, Inc. v. Louisiana Public Service Commission, supra.
The Commission's General Order of March 12, 1974 concerning "Duplication of Electric Service" directs that electric service to areas outside of the 300 feet limit of R.S. 45:123 shall be provided by the utility that can most economically serve that area. Dixie contends that Gulf States failed to prove that it could service Round Oak Subdivision more economically than could Dixie. Dixie cites the Commission's finding that it cost Dixie $8,600.00 to provide the required three-phase service to a sewer lift-station located on the north part of the subdivision while the cost to Gulf States to provide similar service to the same lift-station would be $26,137.62.
Dixie has failed to accurately perceive the costs of servicing this subdivision in its entirety. Once within the boundaries of the subdivision, testimony adduced before the Commission indicated that the cost of providing service to the entire subdivision within its boundaries would be the same for either utility. Thus, the only difference in cost to each utility would be the costs incurred in extending their three-phase service to the boundary of the subdivision. Once within its boundaries, the costs to each utility are the same. The Commission found that, in order to reach the boundary of the subdivision, Dixie had to extend their line approximately 2000 feet. Gulf States, on the other hand, had three-phase service just across Jefferson Highway from the boundary of the subdivision. Under these facts, we cannot say that the Commission was arbitrary or capricious in finding that Gulf States could more economically service the Round Oak Subdivision.
It would avoid needless litigation in territorial disputes such as this if the Commission's rulings would follow their stated intent in the March 12, 1974 General Order, "Duplication of Electric Service."[4] Therein, the Commission decided, in effect, that customers outside of the 300 foot area defined by La.R.S. 45:123 should be serviced by the utility that could most economically provide service. While this court is mindful of Commission Order No. U-12749, Dixie Electric Membership Corporation v. Gulf States Utilities Company (Woodland Ridge Subdivision, First Filing), wherein the Commission expressed a preference for single utility service within the boundaries of a single subdivision, this court perceives no reason why this subdivision and others might not be serviced by two different utilities, each extending to its economical bounds.
In cases where the economics of providing electric service are the controlling factor, the Commission should take into account the physical characteristics of the subdivision which have bearing on this factor. For example, in this case, where there are great distances between the opposite boundaries of the subdivision, separate utilities maintaining adequate services at each end of the subdivision, and a physical boundary line which could separate the two utilities, logic dictates that it is more economical for one utility to provide service to one end of the subdivision, while the other utility provides service to the other end. Specifically in this case, the evidence shows that it is less expensive for Dixie to service the north end of the Round Oak Subdivision than for Gulf States. Just to run a single three-phase line to a sewer lift-station located within the northern part of the subdivision costs Dixie only $8,600 as opposed to over $26,000 for Gulf States to run a single three-phase line to this same lift-station. Similarly, it is more economical for Gulf States to service the south side of the subdivision. *1212 In addition, there are physical boundary lines, such as the 30 foot wide drainage ditch in this case, along which service boundaries may be established which would have the additional benefit of eliminating the excess costs involved in bridging or otherwise crossing such a boundary.
Be that as it may, such decisions are within the purview of the Commission and not this court, unless they are arbitrary, capricious, or an abuse of the Commission's authority.

DECREE
Accordingly, we affirm the judgment of the district court affirming the Commission's Order No. 14102 which orders that Gulf States service Round Oak Subdivision.
AFFIRMED.
NOTES
[1] The SLECA opinion examined La.R.S. 45:123, which prohibits utilities from constructing or extending electric facilities or service to points of connection already being served by, or within 300 feet of, an electric line of another utility. The opinion interpreted "point of connection" to mean the actual meter connection and not the "area" or "subdivision as a whole." 309 So.2d at 289.
[2] La.R.S. 45:123 defines "electric line" as "a line constructed and operated for the transmission and/or distribution of electricity and which was not originally constructed for the principal purpose of preempting territory." (Emphasis added.) At least one such single-phase line is no longer being operated and was not in operation when Dixie extended services into the subdivision.
[3] For the full text of this order, see Barras v. Louisiana Public Service Commission, 331 So.2d 842 (La.1976).
[4] For the full text of this order, see Appendix I of Louisiana Power & Light Company v. Louisiana Public Service Commission, 343 So.2d 1040 (La.1977).