609 So.2d 797 (1992)
LOUISIANA POWER & LIGHT COMPANY
v.
LOUISIANA PUBLIC SERVICE COMMISSION.
No. 92-CA-1186.
Supreme Court of Louisiana.
November 30, 1992.
*799 J. Wayne Anderson, New Orleans, William G. Burns, Margaret M. Silverstein, Monroe & Lemann, Thomas O. Lind, New Orleans, for applicant.
Carolyn DeVitis, Denham Springs, William O. Bonin, New Iberia, for respondent.
CALOGERO, Chief Justice.
Louisiana Power and Light Company (LP & L) and Central Louisiana Electric Company (CLECO) are competing to serve customers in Pine Oaks Estate (Pine Oaks), a subdivision located in St. Tammany Parish. CLECO had no electric lines near the subdivision before it extended its service. While LP & L had electric lines which virtually surrounded the subdivision, there were only four lots fully within 300 feet of LP & L's lines existing prior to its extending service to one Dallas Dupuy (Dupuy).[1]
Aradi Corporation (Aradi), the owner of the subdivision, entered a "line extension agreement" with CLECO whereby CLECO was to provide electric service to the Pine Oaks subdivision. Subsequently, LP & L extended its electric facilities to serve Dupuy.[2] After this extension of service to Dupuy, Aradi petitioned the Louisiana Public Service Commission to "determine the provider of electric service" to Pine Oaks Estate.
Following a hearing, the Commission determined that the agreement between Aradi and CLECO did not violate any existing order of the Commission except in the proposed service to lots with points of connection within 300 feet of LP & L lines existing prior to the extension of service to Dupuy. Accordingly, the Commission ordered that CLECO be permitted to serve Pine Oaks in accordance with the contract entered into with Aradi. The Commission concluded that LP & L would only be permitted to serve the lots with points of connection within 300 feet of LP & L lines in place prior to its service to Dupuy.
LP & L sought judicial review of the Commission's order in the 19th Judicial District Court for the Parish of East Baton Rouge. The competing utility, CLECO, intervened. The district court affirmed the Commission's order, concluding that LP & L failed to carry its burden of establishing that the order of the Commission was arbitrary, capricious, or abusive of the Commission's authority. LP & L appealed directly to this Court. La. Const. art. IV § 21(E).
The question presented is whether the Public Service Commission has the authority to order that electric service be provided by a public utility chosen by the developer of a subdivision where the chosen utility's existing lines are more distant from the subdivision than those of its rival.
The governing principles in the jurisprudence of this Court are simple enough. Orders of the Commission are presumed to be valid. South La. Elec. Coop. Assoc. v. Louisiana Public Service Comm'n, 367 So.2d 855 (La.1979). They are entitled to great weight and are not to be overturned unless shown to be arbitrary, capricious, or abusive of the Commission's authority. Id. See also Central Louisiana Elec. Co., Inc. v. Louisiana Public Service Comm'n, 370 So.2d 497 (La. 1979); Louisiana Power & Light Co. v. Louisiana Public Service Comm'n, 343 So.2d 1040 (La.1977). Accordingly, the "person attacking a commission order bears the burden of demonstrating that it *800 is defective." Id. at 1044. In the present case, LP & L has not met this high burden.
The Louisiana Constitution grants the Commission plenary authority over the regulation of "all common carriers and public utilities." La. Const. art. IV § 21(B). Louisiana Constitution Article IV Section 21(B) provides:
The [Louisiana Public Service] commission shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law.
Interpreting this constitutional provision, this Court has concluded that the article grants "in mandatory language, constitutional jurisdiction to the commission over all common carriers and public utilities." Cajun Elec. Power Coop., Inc. v. Louisiana Public Service Comm'n, 544 So.2d 362, 364 (La.1989). The court also noted that "[t]he legislature cannot by statute modify that jurisdiction." Id. Accordingly, we have held that this constitutional provision removed the ability of the legislature to alter the commission's jurisdiction over any business defined as a public utility at the time the 1974 Constitution was adopted. Id.
Moreover, we have rejected the contention that the phrase "as provided by law," which the drafters of the 1974 Constitution used throughout the document to mean "as provided by the Legislature," modifies the commission's jurisdiction over common carriers and public utilities. The Court determined that the phrase, "as provided by law", at the conclusion of Article IV Section 21(B), does not qualify the Commission's regulation of "common carriers and public utilities" but rather, qualifies the "other powers and ... other duties" that the legislature may choose to grant the Commission. Id. The Court has emphasized that a different holding would be contrary to the intent of the drafters. Id. at 363.
In Cajun Elec. Power, we explained that when Article IV Section 21(B) was adopted "the majority of the delegates wanted to maintain the status quo insofar as the commission's jurisdiction was concerned." Id. The "`status quo' the delegates sought to maintain was the commission's plenary constitutional jurisdiction over all public utilities." Id. (emphasis added).
As originally drafted, Article IV Section 21(B) provided that the commission would regulate "all common carriers and public utilities as provided by law." Id. In his assignment of additional reasons in Cajun Elec. Power, the author of this opinion noted, as did the majority in different language, that this proposal would have stripped the Commission of all of its constitutional authority and made all of its regulatory authority subject to legislation, or legislative control. Id. at 369. During the debate over this issue, several delegates stressed that Article IV Section 21(B) was not intended to change the authority and jurisdiction of the Commission. Id. Accordingly, the delegates adopted an amendment proposed by Delegate Juneau which eliminated the phrase "as provided by law" where it appeared in the Article following "all common carriers and public utilities," in the original draft.[3] This author also noted that "[t]he adoption of this amendment prevented a major change in the law" which would have made all constitutional authority of the Commission subject to legislative control. Id. at 369. See also South Cent. Bell Tel. Co. v. Louisiana Public Service Comm'n, 412 So.2d 1069 (La.1982).
Accordingly, Article IV Section 21(B) provides the Commission with broad and independent power and authority to regulate common carriers and public utilities. See generally South Cent. Bell Tel. Co., 412 So.2d at 1072. To accomplish this goal, the Commission may "adopt and enforce reasonable rules, regulations, and *801 procedures necessary for the discharge of its duties." Id.; La. Const. art. IV § 21(B).
Although this constitutional grant of authority to the Commission is quite broad, the Commission must nonetheless operate within its bounds. The Commission is confined by the requirement that it adopt "reasonable rules, regulations, and procedures necessary for the discharge of its duties." La. Const. art. IV § 21(B).
Coincidentally, and relevant to the extension of electric utility services, the Louisiana Legislature has enacted the following statute:
"No electric public utility shall construct or extend its facilities or furnish or offer to furnish electric service to any point of connection which at the time of the proposed construction, extension, or service is being served by, or which is not being served but is located within three hundred feet of an electric line of another public utility, except with the consent in writing of such other electric public utility...."
La.Rev.Stat.Ann. § 45:123 (West Supp. 1992).
LP & L relies upon this statute in its attack upon the Commission's order in this case. LP & L complains that the Commission has no authority to award "territory" to a utility, that such an award violates Louisiana Revised Statute § 45:123. However, this statute does not address allocation of territory. Nor does it concern agreements between developers and public utilities. The statute's purpose is merely to "avoid the needless duplication of electric facilities." Claiborne Elec. Coop., Inc. v. Louisiana Public Service Comm'n, 388 So.2d 792, 796 (La.1980); Central Louisiana Elec. Co., Inc. v. Louisiana Public Service Comm'n, 344 So.2d 1046, 1048 (La. 1977); Louisiana Power & Light Co. v. Louisiana Public Service Comm'n, 343 So.2d 1040, 1043 (La.1977). The statute is limited in application to constraining customers and utilities where a competitor utility has an electric line within 300 feet of a point of connection. Dixie Elec. Membership Corp. v. Louisiana Public Service Comm'n, 441 So.2d 1212, 1214 (La.1983).
Were the Commission's order in conflict with Louisiana Revised Statute § 45:123 or any other statute, we might have to address the respective Constitutional powers of the Legislature and the Public Service Commission. But that is unnecessary here, for the Commission's order in the present case does not address the problem with which the statute was concerned. In fact, the Commission has from time to time adopted general orders governing the furnishing of electric services outside, not inside, the 300 foot areas created by the statute, thus not at variance with Louisiana Revised Statute § 45:123. See, e.g., Louisiana Public Service Commission General Order U-3-12-74 entitled "Duplication of Electric Service."
Furthermore, this Court has also rejected the contention that merely "because the Legislature addresses itself to a part of a problem within the constitutional authority of the commission, the commission is deprived of its constitutional power to issue regulations [and orders] concerning broader aspects of the issue with which the legislature concerned itself only in part." Louisiana Power & Light Co., 343 So.2d at 1043. See also Louisiana Power & Light Co. v. Louisiana Public Service Comm'n, 353 So.2d 718, 722 (La.1977). Likewise, we reject the contention that the Commission is deprived of its constitutional power and authority if the legislature adopts a statute which has an ancillary effect on the jurisdiction of the commission. Thus, while Louisiana Revised Statute § 45:123 has the ancillary effect of allocating territory to a utility, this statute does not and could not usurp the Commission's constitutional grant of power.
Moreover, this Court has on two occasions implicitly recognized the validity of an agreement for the provision of electric services to a subdivision between a developer and a public utility. Louisiana Power & Light Co. v. Louisiana Public Service Comm'n, 392 So.2d 658 (La.1980); Dixie Elec. Membership Corp. v. Louisiana Public Service Comm'n, 441 So.2d 1212 (La.1983). Thus, as noted by the district court and the Commission, the agreement *802 between Aradi and CLECO does not violate any orders of the Commission or any Louisiana statutory law. Therefore, considering the broad plenary power of the Commission to regulate all public utilities, the Commission has the power to select one of two competing public utilities to provide service to a subdivision where the chosen utility has contracted with the subdivision developer to provide service. The Commission's order in the present case did not exceed the scope of its authority.
Aradi's contract with CLECO preceded by seven days Dupuy's application to LP & L for temporary electric service.[4] Also, the extension of temporary service to Dupuy occurred one day after CLECO had staked its line which would provide electric service to the subdivision. Under these circumstances, LP & L cannot reasonably urge that the 300 foot rule created vested property rights within a 300 foot perimeter of electric lines servicing Dupuy's point of connection, to the prejudice of CLECO in this case. However, as recognized by the Commission, the statute protects LP & L's right to service points of connection within 300 feet of its electric lines existing before the extension of service to Dupuy.
LP & L also asserted in its argument that the Commission's order is arbitrary, capricious, or abusive of the Commission's authority. This record does not establish that contention. Moreover, as discussed, orders of the Commission are presumed valid and the party attacking an order's validity bears the burden of establishing that the order is defective. LP & L has failed to establish that the Commission's exercise of authority in the present case is arbitrary, capricious, or an abuse of its power.

DECREE
For the foregoing reasons, we affirm the decisions of the district court and the Commission. All costs are assessed against the plaintiff-appellant.
AFFIRMED.
WATSON, J., concurs in result and assigns reasons.
COLE, J., concurs in result only. I dissented in Cajun Elec. Power v. LPSC partly for the reasons now assigned by Justice WATSON which I join and I reiterate the reasons stated in my Cajun Elec. dissent.
WATSON, Justice, concurring.
The description by the majority of "plenary" authority and the quoted language from Cajun Elec. Power v. Louisiana Public Serv. Com'n, 544 So.2d 362 (La. 1989), tend to overstate the Commission's jurisdiction, which is limited to regulation.
I respectfully concur in the result reached by the majority.
NOTES
[1] These four lots are located on the northern portion of the subdivision and near LP & L's electric lines extending along Brewster Road. An examination of the surveys submitted in this case indicates that ten additional lots in the subdivision are in part located within 300 feet of LP & L lines existing prior to LP & L's extension of service to Dupuy. Most of these lots are located on the eastern portion of the subdivision and near LP & L's electric lines which extend along Perrilloux Road.
[2] Dupuy, an early purchaser of a lot in Aradi's subdivision, applied for temporary service with LP & L seven days after Aradi had entered the line extension agreement with CLECO. However, LP & L did not extend temporary service to Dupuy until the day after one of its employees noticed that CLECO had staked its line to provide service to the subdivision.
[3] Juneau offered the amendment to preclude "in the future ... the legislature from completely stripping the Public Service Commission of duties that I think we fully intend to give them."
[4] The evidence indicates that Aradi believed it would obtain more advantageous terms with CLECO than LP & L.