NEUTRALITY LAWS. See Append. Fed. Cas.

## Case No. 10,129.

### The NEVADA.

[Cited in The Nellie Husted. Case No. 10,098. Nowhere reported; opinion not now accessible.]

## Case No. 10,130.

### The NEVADA.

[7 Ben. 386.] [1]

District Court, E. D. New York. July, 1874.

OFF-SHORE PILOTAGE — TENDER AND REFUSAL — STATE LIMITS—EFFECT OF STATE STATUTE.

1. A British ship, bound to New York, was spoken by a pilot before coming in sight of Sandy Hook light, and his services tendered. The master offered to take the pilot on board, but refused to pay off-shore pilotage, and the pilot left. Afterwards the ship took another pilot, and paid in-shore pilotage. The first pilot filed a libel to recover pilotage, as on a refusal of his services: *Held*, that the first pilot was refused within the meaning of the pilotage act of the state of New York of April 3d, 1857;

2. It would defeat the purpose of the statute to make pilotage payable after tender and refusal only where the ship did not accept the service of any pilot. The words of the statute do not forbid recovery in this case;

3. The pilot laws of a state have sufficient effect beyond the boundary of the state to fix the compensation of pilots;

4. The libellant was entitled to a decree.

In admiralty.

Butler, Stillman & Hubbard, for libellant.
Beebe, Wilcox & Hobbs, for claimant.

BENEDICT, District Judge. The libel in this cause was filed by a New York pilot, to recover off-shore pilotage of the bark Nevada, upon the ground of an offer of services and a refusal thereof, which occurred on the 4th day of January, 1874. The admitted facts are as follows: The bark Nevada, a British vessel, owned by subjects of Great Britain, was on the high seas, bound for the port of New York, and distant 14 miles to the southward and eastward from Sandy Hook lighthouse, and at such a distance that said lighthouse could not be seen from the deck of a vessel in fair weather in the day time. While the vessel was in this position, the libellant, a New York pilot, spoke her and offered his services to pilot her into the port of New York. The master thereupon offered to take him on board, but said he would not pay

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

off-shore pilotage. Upon this notice, the libellant left the vessel, and the master subsequently took another pilot, to whom he duly paid in-shore pilotage for piloting the vessel into the port of New York. The libellant was the first pilot offering his services to the vessel.

Upon this state of facts, it is contended in defence, first, that the facts do not show a refusal of the pilot's services, upon which the right to recover is, by the statute of the state of New York, passed April 3d, 1857, made to depend. Upon this point my opinion is, that the facts stated show a refusal to take the libellant as the vessel's pilot, within the meaning of the statute referred to. It is, next, contended, that, under the words of the statute, pilotage becomes payable by reason of a tender and refusal of service only in the case of a failure to accept the services of any pilot, and that there can be no recovery in a case like this, when it appears that subsequent to the refusal to accept the services of the libellant, the services of another pilot were accepted and paid for.

But it is evident that such a construction would defeat the objects of the statute. The interests of commerce require, that pilots be induced to board ships far out at sea. In all pilot systems, therefore, a higher rate of pilotage is fixed by the law, when tender of services is made beyond a certain distance. Ships boarded beyond the line pay at a certain rate, without regard to the distance beyond this line, and must pay the pilot who first tenders services beyond this line. Such an effect must be given to the statute in question to secure the result intended by the act. By such a provision pilots are induced to go far out to sea in search of ships, while the ship pays only off-shore pilotage, no matter how far distant from port she may be when boarded. The words of the statute do not, therefore, forbid a recovery in this case. But see Gillespie v. Zittlosen [60 N. Y. 449], in which the contrary has since been decided.

It is next contended, that the pilotage law of the state of New York is of no effect beyond the territory of the state, and that inasmuch as the libellant bases his right to recover upon the statute of New York, and admits that the vessel was beyond the limits of the state at the time she was boarded, he cannot recover. But pilot laws have sufficient effect beyond the boundary of the state to fix the rate of compensation for services tendered. Similar provisions in the pilot laws of France have been held obligatory on French vessels when situated within the limits of British ports on the British channel. The compulsory pilot law of England has been held to be obligatory upon an American vessel outside the limits of British jurisdiction, when bound to a British port (Lushington). The statute of New York, now under consideration, has been considered by the court of appeals of the state of New York as effective upon seas neighboring to the port of New

York, although beyond the territorial jurisdiction of the state. Cisco v. Robert, 36 N. Y. 292. My conclusion, therefore, is, that the libellant is entitled to recover the amount of his demand.