DENNIS, Justice.*
This case involves a dispute between Gulf States Utilities Co. (GSU) and Natural Gas Co. of Louisiana (NGL) as to which of these natural gas utilities shall render service to the Santa Maria Subdivision, south of Baton Rouge.. Both GSU and NGL own and operate natural gas mains near the subdivision. In October 1992, the developer of the subdivision contracted with GSU to provide service and GSU began to extend a gas main to the area of the subdivision being developed. On October 30, 1992, NGL filed a complaint with the LPSC contending that pursuant to an Order of the Commission dated January 18,1954, that only NGL could provide service to the area.
The 1954 order, in pertinent part, provides that:
[N]o extension of mains shall be made by a Water or Gas Public Utility that will duplicate the service of another like utility serving the same commodity, nor shall extensions be made to serve customers that could be served by a Public Utility already in existence in an economic and justifiable manner. In cases where it may be economically feasible for more than one utility company to serve a given customer or area, service shall be rendered by that company which can do so with the shortest, or least expensive extension, (emphasis added).
NGL’s nearest gas main is immediately across Old Perkins Road from the section of the subdivision initially scheduled for development (the “first filing”). The nearest GSU main to the first filing is located approximately 1,100 feet from its southwest corner, although GSU has gas mains located nearer to other sections of the subdivision not presently under development. The LPSC conducted a hearing on NGL’s complaint and decided that although NGL could serve the area in question with the shortest and least expensive extension, the developer would be allowed to choose GSU to serve the area because the difference in cost and distance was “minimal when the entire subdivision ... is considered.” The LPSC’s order, in pertinent part, reads as follows:
It is the opinion of the Commission that General Order entitled “Definition of Territory of Water and Gas Utilities”, dated January 18, 1954, was adopted to prevent like utilities from providing duplicate ser *360 vices that will cause increased costs and, therefore, increased rates. The Commission does not find it to be the case in this Complaint. This Commission has not traditionally allocated territories to gas and water utilities. It will allow “feeder” mains through the operating area of another as long as such construction is not tapped for service within the area served by another.
There is a differential in cost to reach the area by each utility, but this differential is minimal when the entire subdivision known as Santa Maria Subdivision is considered. The revenues to be derived from the homes and businesses after construction will not burden the existing ratepayer. It is apparent that the developer should have his choice as to the serving gas utility. (emphasis in original).
NGL sought judicial review of the LPSC’s order. After a hearing, the trial court determined that the 1954 General Order was applicable to this situation and that the controlling provision in the Order was clear and unambiguous that in certain situations involving competing utilities service shall be rendered by that company which can do so with the shortest or least expensive extension. The trial court concluded that the LPSC ignored its own order by allowing the developer to choose GSU to provide service to the subdivision even though GSU’s extension was not the shortest or least expensive. Additionally, the court concluded that the LPSC should not have considered the cost of providing service to the entire subdivision because there was no evidence presented that the subdivision would ever be expanded beyond the first filing. The trial court vacated the LPSC’s order, concluding that the agency’s determination was arbitrary, capricious, and not supported by the record because the evidence demonstrated clearly that NGL could render the service at issue with a shorter and less expensive extension. The court instructed GSU to abandon further construction in the subdivision and authorized NGL to serve the subdivision.
The LPSC and GSU, as intervenor, appealed.
We affirm. The facts are simple and not in serious dispute. GSU can serve the area in question with an 1,100 foot extension that will cost between $5,000 and $18,000. NGL can do so with a short extension across Old Perkins Road that will cost $861. Each utility can operate the service economically. Thus a straightforward application of the rule would seem to require a decision in NGL’s favor; there is no dispute that NGL can serve the customer or area with the shortest, or least expensive extension. Nevertheless, the LPSC delegates carte blanche to the developer of the subdivision to choose GSU to serve its residences, businesses, and future ratepayers. The only reasons given by the LPSC for acceding to the developer’s preference are (1) the difference in cost is “minimal” when the entire subdivision is considered; and (2) the revenues to be derived from the homes and businesses after construction will not burden the existing ratepayers.
Although the courts should give reasonable leeway to the LPSC in its interpretation and application of its own rules, Dixie Elec. Membership Corp. v. LPSC, 441 So.2d 1208 (La.1983); Central Louisiana Elec. Co., Inc. v. LPSC, 370 So.2d 497 (La.1979); Chevron v. Natural Resources Defense Council, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the record simply does not demonstrate any rationally principled basis for the agency’s interpretation of the rule in the present case. Assuming that the LPSC’s rule substantially furthers the public interest by allocating the extension of water and gas mains on the most economical basis, it is difficult to see why the departure from the rule allowed in the present case is unimportant or not in conflict with the underlying practical policy. The LPSC does not articulate the standard by which it decided that the difference in cost between the GSU and NGL extensions is de minimis. It may be that the differential is small in comparison with the cost of extending service to the entire subdivision, but such an exception to the LPSC’s rule might apply in so many cases as to swallow the rule. Further, although the difference may be relatively small, the evidence indicates it might well double the cost of construction of the system in the first filing. *361 If the exception created by the LPSC order does not render the rule meaningless, it at least creates a need for the LPSC to articulate a rational basis for classifying the cases to which the rule will and will not apply. See Bowie v. LPSC, 627 So.2d 164 passim (La.1993); Sugar Bowl Gas. v. LPSC, 354 So.2d 1014 (La.1978). Additionally, the LPSC does not articulate a rational basis for its conclusion that the increase in construction cost will not raise the rate base and thereby burden existing as well as future ratepayers; and it does not even attempt to explain why future ratepayers deserve no protection from duplicative and uneconomical extensions of water and gas mains.
Accordingly, the trial court’s judgment is affirmed.
AFFIRMED.

 Ortique, J. not on panel. Rule IV, Part 2, § 3.