671 So.2d 908 (1996)
WASHINGTON-ST. TAMMANY ELECTRICAL COOPERATIVE, INC.
v.
LOUISIANA PUBLIC SERVICE COMMISSION.
No. 95-CA-1932.
Supreme Court of Louisiana.
April 8, 1996.
Rehearing Denied May 31, 1996.
*909 Robert Lewis Rieger, Jr., Joseph H. Kavanaugh, Adams & Reese, for Applicant.
William O. Bonin, Brian A. Eddington, for Respondent.
KIMBALL, Justice.
The issue in this case is whether a new point of connection arises under La.R.S. 45:123 when a structure being served by an electric utility is demolished and a new structure replaces it shortly thereafter. The Public Service Commission ("the Commission") held that a new point of connection is created in such a situation, and the district court affirmed. On direct civil appeal we reverse, holding that a new point of connection is not created under La.R.S. 45:123 when a structure being served by an electric utility is demolished and that structure is replaced shortly thereafter.

I. FACTS
Washington-St. Tammany Electrical Cooperative ("WST") and Central Louisiana Electric Cooperative, Inc. ("CLECO") have overlapping service territories in which they compete for customers. One of these overlapping service territories is located in the vicinity of Gause Boulevard in Slidell. In the 1960s WST installed aerial electrical lines *910 along both sides of Gause Boulevard. CLECO also had an aerial line along one side of Gause Boulevard. Beginning in 1973 WST furnished electrical service to the Baehr Building, located at the corner of Frederick Street and Gause Boulevard. In 1980 Gause Boulevard was widened by the Louisiana Department of Transportation and Development. While WST chose to relocate its lines along Gause Boulevard to the newly expanded rights of way in order to accommodate the widening project and maintain service to its existing customers, CLECO chose to dismantle its line along Gause Boulevard. When the widening project was completed, CLECO only served one customer on Gause Boulevard, and it provided this electric service by buying power from WST, whose facilities extended to that customer. However, in 1983 CLECO's customer ceased operations and removed its business structure. No CLECO line existed nor was any CLECO customer served from WST's line for the ten year period from 1983 to 1993. In the spring of 1993, the Baehr Building, still being served by WST, was demolished. When construction on the site began shortly thereafter, WST provided service to the site. Because CLECO had not rebuilt its lines along Gause Boulevard, it had no lines in the vicinity of the site.
In the early summer of 1993, CLECO representatives invited Public Service Commission Chief Engineer and Utilities Hearing Examiner, Edward Gallegos, to review the site of the old Baehr Building where construction of a Kenny Rogers Roasters Restaurant ("the restaurant") was to begin. The CLECO representatives did not inform Gallegos that WST had previously serviced the Baehr Building on the same premises as the new construction, nor did they inform Gallegos that WST was providing service to the contractor on the construction site. Gallegos opined that he viewed this as a "customer choice" situation in which the customer could select the preferred utility under La.R.S. 45:123.
The restaurant contracted with CLECO for electric service. In the summer of 1993, after construction began, CLECO ran a new underground line paralleling WST's along Gause Boulevard and then underneath Gause Boulevard to serve the restaurant at the corner of Gause and Frederick. The CLECO point of connection was within 300 feet of WST's point of connection and within 300 feet of WST's existing lines. The new CLECO line was also within 300 feet of the CLECO line that had been dismantled in 1980.

II. PROCEDURAL HISTORY
WST brought this action against CLECO, alleging that CLECO's servicing of the restaurant violated La.R.S. 45:123 which states, in pertinent part:
A. (1) No electric public utility shall construct or extend its facilities or furnish or offer to furnish electric service to any point of connection which at the time of the proposed construction, extension, or service is being served by, or which is not being served but is located within three hundred feet of an electric line of another electric public utility, except with the consent in writing of such other electric public utility. However, nothing contained herein shall preclude:
(a) Any electric public utility from extending service to an applicant for service at an unserved point of connection located within three hundred feet of an existing line of such electric public utility, unless:
(1) Such line was not in operation on April 1, 1970, and
(ii) The point of connection is located within three hundred feet of an existing electric line of another electric public utility, which line was in operation on said date, or
(b) Any electric public utility from extending service to its own property or to another electric public utility for resale.
(2) Further, any consumer receiving electric service from a public utility that is subject to the jurisdiction of the Louisiana Public Service Commission who feels aggrieved with the electric service being received by him may apply to the Louisiana Public Service Commission for an order directed to his present supplier to show cause why the consumer should not be released from said supplier, and if the commission shall find that the service rendered to such consumer is inadequate, and *911 will not be rendered adequate within a reasonable time the release shall be granted.
B. As used in this Section, "electric line" means a line constructed and operated for the transmission or distribution or transmission and distribution of electricity, and that was not originally constructed for the principal purpose of preempting territory.
On May 10, 1994, a hearing was held in front of Hearing Examiner Gallegos. Gallegos took the matter under advisement, and on June 22, 1994, issued a memorandum summarizing the evidence adduced at the hearing as follows:
Witness L. Lenel, Staking Engineer for WST, testified that WST served the Baehr building at approximately the same location as the new Kenny Rogers building. A gentleman, Mr. Smith told him that he owned the property and demolished the old building to build the Kenny Rogers Restaurant. WST provided construction power for the contractor. The old building was served by WST from 1973 to 1993. There were no CLECO lines in the area at that time.
Witness John Hawkins, CLECO Senior Engineer, testified that CLECO established a new point of connection within 300 feet of a new underground electric line constructed by CLECO along Gause Blvd. in 1993. This underground line parallels the location of an aerial line removed by CLECO in 1980 at the request of the Department of Transportation and Development when Gause Blvd. was widened to four lanes. The line could not be rebuilt because the WST poles were not tall enough to allow "joint use." CLECO had a customer along this over-head route before the highway was widened. CLECO purchased power for this customer from WST until this customer moved away and terminated service.
He further testified that the Examiner visited the area prior to the hearing and advised CLECO that this was a "customer choice" situation and CLECO could serve. He responded on cross examination that CLECO may have failed to advise the Examiner that WST had served a point of connection at this location prior to the construction of Kenny Rogers Restaurant.
Based on this evidence, the hearing examiner opined:
It is the opinion of the Examiner that WST had a point of connection on this property prior to the construction of the new building and thus was the electric utility to serve the new construction. It is unfortunate that CLECO did not provide the Examiner with full data during an on-site visit that revealed that WST had removed its facilities from the old building and provided construction power to allow the new construction.
On November 9, 1994, the matter was considered by the Public Service Commission at an Open Session.[1] The Commission issued an order (U-20816) which contained the identical evidentiary summary of the hearing examiner, with the exception of the omission of the third paragraph wherein CLECO failed to inform Gallegos that WST served the new building when Gallegos visited the site prior to this litigation. The Commission then concluded:
It is the opinion of the Commission that both CLECO and WST have had electric facilities along Gause Blvd. adjacent to the property in question for a number of years and both are within 300 feet of the "point of connection" of the new construction. This is a customer choice situation with no exclusive right granted to either party. *912 CLECO will be permitted to serve this customer and this docket is hereby dismissed.
WST appealed to the Nineteenth Judicial District Court. The district court affirmed, stating in part:
I am going to uphold the Public Service Commission's decision. I don't think the hearing examiner gave proper weight in considering CLECO's historical jurisdiction over that area. CLECO's lines were removed in order to widen Gause Boulevard, and it did not replace their lines because there was no customer to serve. When a new point of connection arose within 300 feet of where the line was, the Public Service Commission was correct to recognize CLECO's historical line rights, in this court's opinion. Revised Statute 45:123 relates to point of connection and not to an area as interpreted by the supreme court in South Louisiana Electric Cooperative Association v. Louisiana Public Service Commission[, 309 So.2d 287 (La.1975)]. If a new point of connection arises within 300 feet of two utility company service lines, I feel, this court's ruling is that the customer can make the choice.
This direct civil appeal followed. La. Const. Art. IV, Sec. 21(E).

III. DISCUSSION

A. Standard of Review
As a general rule, an order of the Public Service Commission should not be overturned on review unless it is shown to be arbitrary, capricious, abusive of its authority, or not reasonably based upon the evidence presented. Dixie Electric Membership Corporation v. Louisiana Public Service Commission, 441 So.2d 1208, 1210 (La.1983); Radiofone, Inc. v. Louisiana Public Service Commission, 573 So.2d 460, 461 (La.1991). While a ruling of the Commission may be deemed arbitrary unless supported by some factual evidence, the function of the court on judicial review is not to re-weigh and re-evaluate the evidence or to substitute its judgment for that of the administrative agency constitutionally entrusted with regulation of the matter. Truck Service, Inc. v. Louisiana Public Service Commission, 263 La. 588, 268 So.2d 666 (1972).
This standard of review, however, is restricted to the Commission's assessment of the facts only in this case. The Public Service Commission is not entitled to deference in its interpretation of statutes and judicial decisions. Dixie Electric Membership Corporation v. Louisiana Public Service Commission, 441 So.2d 1208, 1211 (La. 1983); see also Central Louisiana Electric Co., Inc. v. Louisiana Public Service Commission, 370 So.2d 497, 501 (La.1979). In Dixie Electric Membership Corporation, supra, this court stated:
The Commission is an expert within its own specialized field and its interpretation and application of its own General Orders, as distinguished from legislative statutes and judicial decisions deserve great weight, because the Commission is in the best position to apply its own General Orders.
Id. at 1211 (emphasis added).[2]
As with any case before this court, we ordinarily defer to the Commission's factual conclusions; however, its legal interpretation of La.R.S. 45:123 is not entitled to deference. This court is the ultimate arbiter of the meaning of the laws of this state. We have previously used this approach in a Public Service Commission case. See, e.g., South Louisiana Electric Cooperative Association v. Louisiana Public Service Commission, 309 So.2d 287 (La.1975), where the Commission interpreted "point of connection" as used in La.R.S. 45:123 to mean "area," and the district court interpreted it to relate to "subdivision as a whole." This court, giving no deference to these interpretations, reversed, finding "point of connection" meant the point where the service hooks up to the individual house meter.

*913 B. Interpretation of R.S. 45:123
Generally, La.R.S. 45:123 prohibits one electric public utility from serving a point of connection which is: (1) currently being served by another electric utility or (2) not currently being served by another electric utility but is located within three hundred feet of an electric line of another electric utility, without consent of that utility. However, this prohibition does not preclude a utility from extending service to an applicant for service "at an unserved point of connection" within three hundred feet of its own line. R.S. 45:123(A)(1)(a). As a result, if there is an unserved point of connection within three hundred feet of two public utilities' electric lines the customer is allowed to choose his provider, what is known as "customer choice."
CLECO contends that such a customer choice situation exists in this case because: (1) the restaurant is an "unserved point of connection" under the statute; and (2) the unserved point of connection is located within three hundred feet of CLECO's electric lines based on CLECO's "historic line rights". Specifically with regard to the first argument, CLECO argues the point of connection is the actual meter box and when the Baehr Building was demolished, the point of connection was demolished as well; thus, when the restaurant was constructed, a new point of connection was created.
Thus, the issues to be resolved in this case are: (1) whether a new point of connection is created where one structure is demolished and replaced soon thereafter with another structure, and (2) if not, whether that point of connection was being "served" by WST when CLECO attempted to provide service. We first turn our attention to whether a new point of connection is created where one structure is demolished and replaced soon thereafter with another structure. To determine this, we must first decide what constitutes a "point of connection." In South Louisiana Electric Cooperative Association v. Louisiana Public Service Commission, 309 So.2d 287 (La.1975), the Commission held that "point of connection" as used in R.S. 45:123 referred to a subdivision as a whole, and not to each individual meter connection. This court reversed, finding that "point of connection" was not an ambiguous or technical term and, in layman's language meant "the point of actual connection of electric service by the utility to the customer." Additionally, the court reasoned that the Commission's interpretation that a point of connection constituted an entire subdivision created a great amount of uncertainty, which might lead to territorial disputes between electric utilities. Thus, the court held that "point of connection" as used in R.S. 45:123 meant "actual meter connection." See also Dixie Electric Membership Corporation v. Louisiana Public Service Commission, 441 So.2d 1212 (La. 1983).
CLECO asserts herein that under the rationale of the above cases interpreting "point of connection," a new point of connection arose when the Baehr Building was demolished and the restaurant was built in its place. The thrust of CLECO's argument is that since the actual meter box or connection to the Baehr Building was demolished along with the building, to treat the new meter connection as a continuation of the old point of connection would define "point of connection" in relation to an area rather than an actual meter connection in contravention of South Louisiana Electric Cooperative Association.
Although in South Louisiana Electric Cooperative Association we may have implied "point of connection" meant the meter box itself, the facts of the instant case, where a single structure on a site is demolished and replaced soon thereafter with another single structure, are very different from the facts of South Louisiana Electric Cooperative Association, and, in any case, such an implication was not necessary under the facts of South Louisiana Electric Cooperative Association. The inherent problems with interpreting point of connection only to mean meter box itself are clearly illuminated where a single structure on a site is demolished and replaced soon thereafter with another single structure. Interpreting "point of connection" to mean the meter box itself leads to results in contravention of the purposes of R.S. 45:123 in that territorial disputes would be *914 encouraged as would needless duplication of electric facilitiesconsequences which this court has held should be discouraged under R.S. 45:123.
First, as we recognized in South Louisiana Electric Cooperative Association, 309 So.2d at 289-90, territorial disputes should be discouraged. If we were to interpret point of connection to mean the actual meter box under the facts of this case, there would be a battle for the customer every time a building was destroyed, despite the fact the point of connection was being served by a particular utility prior to the demolition. Furthermore, other issues may arise: For example, a new unserved point of connection might arise under La.R.S. 45:123 if a building is partially demolished and the demolished section contained the meter location. Additionally, a new unserved point of connection might arise if there is an addition to an existing building and the addition contains a meter location. Our interpretation of La. R.S. 45:123 avoids these problemselectric utilities can be certain they have the exclusive right to serve the points of connection to which they currently provide service.
Furthermore, the purpose of R.S. 45:123 is to "avoid the needless duplication of electric facilities." Louisiana Power & Light v. Louisiana Public Service Commission, 609 So.2d 797, 801 (La.1992); Claiborne Electric Cooperative, Inc. v. Louisiana Public Service Commission, 388 So.2d 792, 796 (La.1980); Central Louisiana Electric Co., Inc. v. Louisiana Public Service Commission, 344 So.2d 1046, 1048 (La.1977); Louisiana Power & Light Co. v. Louisiana Public Service Commission, 343 So.2d 1040, 1043 (La.1977). A rule that a new point of connection is created every time a structure is demolished would not serve the purpose of R.S. 45:123; indeed, such a rule would run counter to that purpose. Obviously, when a structure is being served by an electric utility, that utility has extended electric facilities to the site of the structure. If that structure is demolished and, under R.S. 45:123, another electric utility was allowed to serve that structure, the new provider of electricity will be required to extend electric facilities to the site. In such a case, electric facilities would be needlessly duplicated, in contravention of the purpose of La.R.S. 45:123. Other problems arise with this interpretation. For example, a customer being served by one utility located within 300 feet of the lines of two electric utilities, but presently being served by one utility, could create a customer choice situation simply by destroying his existing meter box or moving it to another location on the same structure. Moreover, the same customer could install a second meter box and receive service from two different utilities for the same structure.
In our view, because of the absurd consequences discussed above which would result from any other interpretation, a new point of connection is not created under La. R.S. 45:123 when a structure is demolished and replaced shortly thereafter by another single structure. Rather, the point where electricity enters the new structure should be considered the same "point of connection" as the point where electricity entered the demolished structure for the purposes of R.S. 45:123.
Since we hold that a new "point of connection" was not created when the Baehr Building was destroyed and the restaurant erected, we must determine whether the point of connection was "served." WST provided service to this point of connection prior to demolition and during the construction of the new building at the point CLECO sought to extend service thereto. As such, the restaurant is not an "unserved point of connection," and CLECO did not have authority to serve it under R.S. 45:123(A)(1). Instead, WST possesses the exclusive right to serve the restaurant.
Since we hold that a new, unserved point of connection was not created when the Baehr Building was destroyed and replaced by the restaurant, we need not reach the issue of whether CLECO's "historic line rights" are effective under R.S. 45:123(A)(1)(a). The statute clearly prohibits CLECO's service of the restaurant notwithstanding any "historic line rights" in light of the fact that a point of connection served by *915 WST existed at the time CLECO extended service to the restaurant.[3]

IV. CONCLUSION
We reverse the rulings of the Commission and the district court. We hold that a new unserved point of connection is not created under La.R.S. 45:123 when a structure is demolished and a new structure is built in its place. As a result, WST has the exclusive right to provide service to the restaurant. The case is remanded to the Public Service Commission for proceedings consistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] WST contends that the only information before the Commission was the report compiled by the hearing officer, and, that although a transcript of the hearing in front of the hearing officer is a necessary part of the record, at the point the Commission issued its decision, the transcript had not been completed and was not before the Commission. Since the tape of the proceeding before the Commission broke before it could be transcribed, it is not possible to determine whether the entire record was actually in front of the Commissioners.

While we will assume for the purposes of this opinion that the Commission had the entire record in front of it, including a transcript of the hearing conducted by Gallegos, we note that it would be inappropriate for the Commission to make a decision on the basis of an incomplete record.
[2] On the other hand, the courts should give reasonable leeway to the Public Service Commission in its interpretation and application of its own rules. Natural Gas Co. of Louisiana v. Louisiana Public Service Commission, 93-CA-2730 (La. 3/24/94), 634 So.2d 358, 360 (1994). In this case, we are dealing with the interpretation of a statute, however.
[3] Our interpretation of R.S. 45:123 is supported by the Commission's own interpretation of the same statute. On October 7, 1993, the Commission adopted Order No. U-20468, entitled "In re: Generic Hearing to Discuss Factual Scenarios Which Might Arise In Administering La.R.S. 45:123." In Order No. U-20468, the Commission stated, "A point of connection shall be continued to be served by an electric utility even if the structure served is removed and a new structure built within the service location."

The Public Service Commission is bound by its own rules. Central Louisiana Electric Co. v. Louisiana Public Service Commission, 377 So.2d 1188 (La.1979). See also Bowie v. Louisiana Public Service Commission, 627 So.2d 164, 169-70 (La.1993) ("The Commission as an administrative agency has the responsibility to ensure the fair and consistent application of any of its rules tending to infringe upon private property rights by developing standards to guide its discretion either through precedents resulting from reasoned opinions rendered in adjudication or by rulemaking resulting in written standards and guidelines."); Gulf States Utilities Co. v. Louisiana Public Service Commission, 381 So.2d 432, 434 n. 3 (La.1980). In other words, it is arbitrary and capricious for the Commission to fail to apply its own rules in an adjudication before it.
Even though the facts of this case arose prior to the promulgation of Order No. U-20468, the Order was in effect at the time of the hearing before the Commission and is interpretive of a preexisting statute; therefore, it should have been applied by the Commission. Under Order No. U-20468, when a structure is demolished and rebuilt, the rebuilt structure does not give rise to a new point of connection under R.S. 45:123.
The provisions of Order No. U-20468 are directly applicable to this case. The Baehr Building was removed and a new structure, the restaurant, was built within the service location. WST previously served the removed building and provided service during the construction of the new building. As a result, under the clear terms the Order, WST had the exclusive right to continue service at the "service location."