815 So.2d 19 (2002)
CITGO PETROLEUM CORPORATION and Conoco
v.
LOUISIANA PUBLIC SERVICE COMMISSION.
Lake Charles Pilots, Inc.,
v.
Louisiana Public Service Commission.
No. 2001-CA-1902 to 2001-CA-1904.
Supreme Court of Louisiana.
March 15, 2002.
Rehearing Denied May 24, 2002.
*20 Stephen C. Carleton, Baton Rouge, Henry D. Heck, Jr., Frank P. Simoneaux, Baton Rouge, Simoneaux, Carleton, Carleton, Dunlop & Olinde; Jack Capella, Metairie, George M. Cotton, Thomas A. Lane, Lane & Cotton; Thomas H. Huval, New Orleans, Michael K. Dees, Lake Charles, Jeansonne & Remondt; Kenneth M. Wright, Richard D. Moreno, Lake Charles, Wright, Everett & Moreno; Counsel for applicant (NO. 2001-CA-1902, 2001-CA-1904 & 2001-CA-1903).
Eva K. Gonzalez, John M. Lamers, Metairie, Counsel for Respondent (No. 2001-CA-1902, 2001-CA-1904 & 2001-CA-1903).
John M. Lamers, Metairie, John M. McCollam, New Orleans, Counsel for Trunkline LNG Company (Amicus Curiae)(No. 2001-CA-1902, 2001-CA-1904 & 2001-CA-1903).
*21 TRAYLOR, Judge.
The trial court in this matter vacated tariffs approved by the Louisiana Public Service Commission (LPSC) governing the fees and rates for the Lake Charles Pilots and remanded the matter to the LPSC for further proceedings. Pursuant to La. Const. art. IV, § 21(E), the ruling was directly appealed to this court. We review the rulings below to determine whether the LPSC has subject matter jurisdiction over the instant action and whether the LPSC may fix and establish fees and rates for pilotage service in the "outer bar," and establish which tariff is currently in effect. For the reasons which follow, we conclude that LPSC has subject matter jurisdiction over the instant action to establish pilotage fees and rates, that the LPSC must regulate "outer bar" pilotage services, and amend the trial court's judgment to reinstate the interim tariff.

FACTS AND PROCEDURAL HISTORY
The ten pilot members of Lake Charles Pilots, Inc., the duly incorporated association of the Associated Branch Pilots of the Port of Lake Charles (LCPI), have sole authorization to pilot seagoing vessels on the "navigable streams, channels, and boundary waters, within the Intracoastal Canal, Calcasieu and Sabine Rivers, bars, and passes," except specified routes along the Mississippi River. La.Rev.Stat. 34:1072, 1073. Pursuant to La.Rev.Stat. 34:1121-1127, the Associated Branch Pilots of the Port of Lake Charles Fee Commission (Fee Commission) has the exclusive right to establish the fees and rates charged by the LCPI pilots for pilotage service. The Fee Commission is comprised of eight members, four of whom represent the interests of the river pilots (the pilot fee commissioners) and four of whom represent the interests of the steamship industry (the industry fee commissioners).
Prior to the filing which is at issue in the instant case, LCPI was operating under the terms of a five-year tariff approved by the Fee Commission and implemented on October 1, 1994. In February 1998, before negotiations could begin to revise the tariff, the four industry fee commissioners resigned from the Fee Commission. Thereafter, Captain Malcolm Gillis, a pilot fee commissioner, certified in writing to the LPSC that a majority of the Fee Commission was unable to decide the fees and rates issue. This certification was made pursuant to La.Rev.Stat. 34:1122(D)(1), which provides that when a majority of the Fee Commission is unable to decide an issue, its members may certify the issue to the LPSC for expedited adjudication, and the LPSC's decision on the issue shall constitute the decision of the Fee Commission.
On September 17, 1998, LCPI filed with the LPSC a proposed tariff and an application for an increase in the pilotage fees and rates charged by LCPI. LCPI subsequently revised the proposed tariff on July 16, 1999. Unlike the 1994 tariff, the newly filed tariff regulated the pilotage fees and rates charged by LCPI only in the area colloquially known as the "inner bar" of the Calcasieu Ship Channel (that portion of the channel located within three geographical miles of the Louisiana coastline); pilotage fees and rates in the "outer bar" (that portion of the channel seaward of three geographical miles beyond the Louisiana coastline) were charged under a separate, unregulated tariff. On November 9, 1999, the LPSC issued its Order No. 23792, implementing the July 16, 1999 tariff on an interim basis (interim order), the proceeds of which were subject to escrow pending final resolution of the rate proceeding.
*22 Subsequently, following its March 22, 2000 Open Session, the LPSC in Order 23792-A (final order) framed the outer bar issue as follows:
Prior to establishing reasonable and just fees and rates for pilotage service and implementing a new tariff, this Commission must determine the extent of the compulsory pilotage area subject to regulation by the State of Louisiana and this Commission, and particularly, whether or not the outer bar ... should be included in the compulsory pilotage area served by the Pilots pursuant to the new tariff. (Emphasis added)
In answering this question, the LPSC did not reach the issue of compulsory pilotage after determining "the outer bar ... [is] not subject to the jurisdiction of the State of Louisiana or [the LPSC]." The order further granted a rate increase to the pilots for the inner bar only, fixing the target annual compensation per pilot at $285,000 per year. The LPSC also approved the addition of four new pilots to LCPI's roster, bringing the total to fourteen active pilots. This ruling was signed June 2, 2000 and made retroactive to November 9, 1999.
Intervenors CITGO Petroleum Corporation (CITGO) and Conoco, Inc. (Conoco),[1] (collectively "Industry Plaintiffs") filed a petition for judicial review of the LPSC's orders in the Nineteenth Judicial District Court.[2] In their appeal, the Industry Plaintiffs alleged that the LPSC lacked subject matter jurisdiction over the action because the conditions precedent to its jurisdiction were not met.[3] Alternatively, *23 the Industry Plaintiffs alleged that the interim and final orders are arbitrary and capricious on the ground that the LPSC's failure to regulate pilotage fees and rates in the outer bar is unlawful.
On April 3, 2001, the district court denied CITGO and Conoco's exception to the LPSC's jurisdiction. After a hearing on the merits of the petitions for judicial review, the district court vacated LPSC's orders and remanded the matter to the LPSC for further proceedings with instructions that the LPSC regulate pilotage fees on the outer bar as part of the final tariff. The court noted that the LPSC should make any adjustments or revisions it deems necessary to fairly resolve this matter; that the parties should be allowed to introduce additional evidence; and that the 1994 tariff would continue from November 9, 1999 until the date it is lawfully amended or terminated by the LPSC. Under the judgment, refunds or assessments deemed appropriate may be charged to the parties. Finally the trial court ordered that the parties work amicably to resolve this matter.
This direct civil appeal followed pursuant to La. Const. art. IV, § 21(E).

DISCUSSION

Standard of Review
As a general rule, an order of the Public Service Commission should not be overturned on review unless it is shown to be arbitrary, capricious, abusive of its authority, or not reasonably based upon the evidence presented. Washington St. Tammany Elec. Co-op., Inc. v. Louisiana Pub. Serv. Comm'n, 95-1932 (La.1996), 671 So.2d 908; Radiofone, Inc. v. Louisiana Pub. Serv. Comm'n, 573 So.2d 460, 461 (La.1991); Dixie Elec. Membership Corp. v. Louisiana Pub. Serv. Comm'n, 441 So.2d 1208, 1210 (La.1983). However, the LPSC is not entitled to deference in its interpretation of statutes and judicial decisions. Washington-St. Tammany, 671 So.2d at 912; Dixie Elec., 441 So.2d at 1211. Therefore, as with any case before this court, we ordinarily defer to the Commission's factual conclusions; however, its legal interpretation of La. Rev. Stats. 34:1121, 1122, and 1073, pertaining to subject matter jurisdiction of the LPSC and regulation of the outer bar, is not entitled to deference. This court is the ultimate arbiter of the meaning of these statutes. See Washington St. Tammany, 671 So.2d at 912; South Louisiana Elec. Coop. Assoc. v. Louisiana Pub. Serv. Comm'n, 309 So.2d 287 (La.1975). Giving no deference to these interpretations, we now determine the correct interpretation of the statues at bar.

Interpretation of La.Rev.Stat. 34:1121 and 1122

Subject Matter Jurisdiction
Subject matter jurisdiction over this matter is provided the LPSC by La. Rev. Stats. 34:1121-1122. The legislature, in enacting these statutes,[4] provided the Fee Commission exclusive authority under the law to determine pilotage fees and rates. See Hayden v. Louisiana Pub. Serv. Comm'n, 553 So.2d 435, 439 (La. 1989). However, in the event that no majority decision is timely made, the dispute may be certified to the LPSC under the conditions set forth in La.Rev.Stat. 34:1121(C) and 1122(D). These conditions are that the LPSC shall constitute the Fee Commission after the lapse of ninety days from a request for negotiation[5] and upon *24 written certification of the issue filed by any member of the Fee Commission with the LPSC. It is only when the Fee Commission is unable to timely muster a majority vote, for example when negotiations reach an impasse, that a matter is referred to the LPSC for adjudication. Hayden v. New Orleans Baton Rouge Steamship Pilots Fee Comm'n, 97-1239 (La.1/21/98), 707 So.2d 3.
The Industry Plaintiffs argue that the LPSC has no subject matter jurisdiction because the requirements of La.Rev.Stat. 34:1122(D) were not satisfied. According to them, the matter was never properly negotiated before the Fee Commission because the industry fee commissioners resigned. They claim negotiation is a critical element which was not met, and prohibits the dispute from proceeding before the LPSC. Furthermore, they submit that the instant petitioner, Lake Charles Pilots, Inc., is not a member of the Fee Commission; that the persons serving as pilot representatives on the Fee Commission did not personally appear and certify the issue to the LPSC; and that there was no dispute before the Fee Commission which could be certified because it was merely a request for increase in pilotage fees. The Industry Plaintiffs ask this court to find that the there can be no resolution of this matter until the legislature acts.[6]
In response to the assertions made by the Industry Plaintiffs, LPSC and intervenor New Orleans Baton Rouge Steamship Pilotage Fee Commission (NOBRA) argue that La.Rev.Stat. 34:1122(C) provides that when the members of a fee commission are unable to attain a majority, the LPSC "shall" constitute the Fee Commission. Accordingly, when the industry members resigned, the Fee Commission was unable to reach the required quorum. Furthermore, they contend the pilots, through their Fee Commission member, Captain Malcolm Gillis,[7] properly certified the issue to the LPSC. Therefore, they ask the court to find the decision of LPSC constituted the decision of the Fee Commission. NOBRA argues the interpretation advanced by the Industry Plaintiffs would lead to absurd consequences in contravention of accepted principles of statutory interpretation. They urge this court to find La. Rev. Stats. 34:1121(C) and 1122(D) were designed to entrust rate making decisions to the LPSC where the Fee Commission could not reach a majority decision. We agree.
Under the statutes, the legislature envisioned the Fee Commission to be made up of industry members and pilot members who would work cooperatively to fix rates for pilot services. Inherent in the statutes is the concept that the eight fee commissioners could reach a tie or otherwise be unable to muster a majority vote. For this reason, the statutes provide for the failsafe resolution of an issue by means of certification to the LPSC. Finding as the Industry Plaintiffs ask would subvert legislative will and lead to absurd results in contravention of the timely adjudication of fee disputes. We cannot seriously consider the contention that the legislature condones fee commissioner resignation designed to subvert the legislative process *25 and stop resolution of an issue. Furthermore, because the statutes at issue were designed to take the rate making decision away from the legislature and vest it in fee commissions, we further find unpersuasive the argument that the legislature intended to retain involvement in the process, requiring revision of the statutes in the event of a stalemate.[8]
In the instant case, the Fee Commission reached an impasse and was unable to reach a quorum after all of the industry members resigned. Fee Commissioner Captain Malcolm Gillis subsequently certified the issue in writing to the LPSC for expedited adjudication. At this point, the LPSC was statutorily required to assume the duties of the Fee Commission and resolve the fee dispute at hand. We affirm the trial court's denial of the exception to LPSC's jurisdiction filed by the Industry Plaintiffs.

The Interim Tariff
NOBRA argues that the trial court violated La.Rev.Stat. 34:1122(D)(3)(b) when it vacated the LPSC orders and returned the River Pilots to the 1994 tariff. They submit that under the Statute, once twelve months have passed after certification of a dispute, the LPSC was required to allow the requested tariff to go into effect. They state that the trial court had no authority to vacate the interim tariff and return to the 1994 tariff.
The LPSC argues that the trial court erred in directing that the 1994 tariff was to continue in effect from November 9, 1999 to the date it is lawfully amended or terminated by the Fee Commission or the LPSC. There is no authority for reinstating a prior tariff pending the appeal of a case.
The LCPI argues that the trial court erred in instituting the tariff in effect in 1997 and failed to recognize the mandatory language of La.Rev.Stat. 34:1122(D)(3)(a) and (b) which require that the last proposed tariff remain in effect until the LPSC enacts a permanent tariff. The trial court may vacate the final order, 23792-A, but since this case has been pending for more than twelve months, the proposed tariff must go back into effect until the LPSC reaches a "full and final decision" on the proposed increase.
We agree with all of these contentions. On the merits of this issue, we find the trial court erred in vacating the interim order and reinstating the 1994 tariff. La. Rev.Stat. 34:1122(D)(3)(b) states:
If the dispute involves a proposed increase in fees and rates and the Louisiana Public Service Commission does not permit the proposed increase to be put into effect prior to its decision, the proposed increase shall nevertheless go into effect, and remain in effect unless and until it reaches a full and final decision disallowing the increase, immediately following the lapse of twelve months following its receipt of certification of the dispute if it has not rendered a decision by such times, subject however, to reasonable protective bonding and other security requirements set by it.
This Statute thus provides that the proposed increase shall go into effect as a matter of law if the LPSC has not rendered a decision within twelve months following its receipt of the certification of the dispute and shall remain in effect unless *26 and until the LPSC reaches a full and final decision disallowing the increase. As this Statute provides for the imposition of the proposed increase by operation of law until the LPS reaches a final decision on the issue, the trial court had no authority to vacate the interim tariff ordered by the LPSC and return the parties to the 1994 tariff. Therefore, we reverse this portion of the trial court's decision and reinstate the interim tariff with the provision that this tariff must immediately be revisited by the LPSC and a decision rendered in light of the findings herein.
We now turn to the remaining issue of whether the LPSC must regulate the outer bar under La.Rev.Stat. 34:1073.

Interpretation of La.Rev.Stat. 34:1073
The scope of LPSC's regulatory authority is set forth in La.Rev.Stat. 34:1073, which provides in pertinent part:
There shall be a body of pilots to be known as River Port Pilots whose duty it shall be to pilot seagoing vessels within the state of Louisiana, through all navigable streams, canals, channels, rivers, passes and bars within the state of Louisiana and across the bars and passes.... (emphasis added).
Defendant LPSC found that it does not have jurisdiction over the outer bar region which lies three to thirty-three miles seaward from the coast of Louisiana. They concede that the state has the authority to give them jurisdiction over this area but propose that the state has not opted to do so.
The Industry Plaintiffs argue that LPSC's determinations are fatally flawed in that they leave the outer bar unregulated, giving unbridled authority to the River Pilots to set fees for this region. They submit that under the statutes, the dispute is frozen until the industry members of the Fee Commission participate in the process. Until the Fee Commission is functioning again, they contend the fee structure may not be changed. Furthermore, they argue that only the legislature may address this "loophole" by amending the statutes.
In response, the River Pilot Plaintiffs argue that the trial court order which vacated the proposed tariff should be reversed and the matter should be remanded to the LPSC. They submit that if the Industry Plaintiff's position is adopted by this court, absurd results such as the inability to resolve fee disputes without legislative intervention would occur.
The LPSC is correct in its contention that the state has the right to regulate the outer bar. See United States v. Locke, 529 U.S. 89, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000); Warner v. Dunlap, 532 F.2d 767 (1st Cir.1976) ("States have been permitted to assert their pilotage regulations at distances considerably greater than three miles from their shores."); Bloomfield v. Sabine Pilots Association, et al., 262 F.2d 345, 347 (5th Cir.1959) (Congress has felt since the founding of this nation that her foreign commerce would best be served by state regulation of pilotage); The Whistler, 13 F. 295 (D.Or.1882) (State may regulate "about 30 miles from the [river] mouth"); Wilson v. McNamee, 102 U.S. 572, 26 L.Ed. 234 (1881) (State may regulate "about fifty miles from ... port"); The Nevada, 18 F.Cas. 16 (E.D.N.Y.1874) (The pilot laws of a state have sufficient effect beyond the boundaries of the state to fix the compensation of pilots); Cooley v. Board of Wardens of Port of Philadelphia, 53 U.S. 299, 13 L.Ed. 996 (1852) (State regulations were permitted in light of local needs and conditions).
However, the LPSC incorrectly determined that it is without jurisdiction over the outer bar because the state has opted to not regulate this area. We find the plain wording of La.Rev.Stat. 34:1073 to be *27 guiding on this issue. The Statute enunciates that licensed pilots are burdened with the duty to pilot seagoing vessels both within the state and "across the bars and passes." By the very wording of La.Rev. Stat. 34:1073, the legislature has proclaimed that river pilots have the duty to pilot seagoing vessels outside of the state's territorial waters: on the outer bar.
Contrary to the River Pilot's argument, the Statute does not limit the pilotage area to that contained within Louisiana's territorial waters. Rather, the Statute's wording indicates that the legislature intended to regulate those portions of the bars and passes lying outside the boundaries of the state. Had the legislature intended the duty of these pilots to end at the territorial boundaries of the state, it would not have included the conjunctive phrase "and across the bars and passes." This conjunctive phrase indicates that pilots are expected to pilot ships during their ingress and egress of the state's territorial waters, through the bars and passes of the outer bar. Accordingly, we order the LPSC to regulate pilotage on the outer bar in compliance with La.Rev.Stat. 34:1073.

Other Assignments of Error
Having determined the correct interpretation of the statutes and relevant jurisprudence, we pretermit discussion of all other issues raised by the parties which are more appropriately determined by the LPSC on remand. It is well recognized that we should not address issues that we need not reach. Washington St. Tammany, 671 So.2d at 914. Since we have resolved the issues pertinent to our review and addressing the remaining issues raised by the parties would serve no purpose pending remand, we decline to address these additional arguments.

CONCLUSION
For the reasons expressed herein, we find that the fee dispute herein was properly certified to the LPSC after the Fee Commission failed to reach a quorum. We further find the LPSC is statutorily vested the regulation of pilots hired to navigate the outer bar, thereby requiring the LPSC to regulate all pilotage services in the outer bar. We amend the portion of the trial court's decision to reinstate the interim tariff. Accordingly, we affirm the trial court's reversal of the LPSC ruling to the extent that it remanded this matter for the inclusion of the outer bar in the final tariff and remand to the LPSC for continued proceedings consistent with this opinion.
AMENDED AND REMANDED.
KNOLL, J., concurs.
NOTES
[1] We note that in another proceeding involving pilotage fees brought by the New Orleans-Baton Rouge Steamship Pilots Association, the LPSC ruled that CITGO and Conoco could participate in the proceeding only as interested parties, not intervenors. CITGO and Conoco sought to appeal this ruling. We did not pass on the merits of this ruling because we concluded CITGO and Conoco did not have standing to appeal under La. Const. art. IV, § 21(E). CITGO Petroleum Corp. V. Louisiana Pub. Serv. Comm'n, 01-0008 (La.4/20/01), 787 So.2d 277.

The instant case is arguably inconsistent with the New Orleans case because CITGO and Conoco have been permitted to intervene. However, the record reveals that no party objected to Conoco's intervention. While some parties objected to CITGO's intervention, they ultimately agreed to allow the intervention, subject to certain limitations. Therefore, because the parties have not objected to the intervention of CITGO and Conoco, the merits of whether these parties have standing to intervene is not before us.
[2] Three separate petitions for judicial review of the LPSC's orders were filed in the Nineteenth Judicial District Court and were ultimately consolidated by order of the district court signed by the three judges to whom the cases had been allotted: CITGO Petroleum Corp., et al. v. Louisiana Pub. Serv. Comm'n, No. 468,813 and No. 472,674; and Lake Charles Pilots, Inc. v. Louisiana Pub. Serv. Comm'n, No. 472,233.
[3] These conditions are set out in La.Rev.Stat. 34:1122(D) which provides in pertinent part:

D. (1) A decision by a majority of the members of the commission shall constitute the decision of the commission. Whenever negotiation of an issue has been requested, in writing, by any two members and a majority of the commission is unable to decide the issue within ninety days of the request for negotiation, any member may certify and file, in writing, the issue with the Louisiana Public Service Commission for expedited adjudication. Upon such filing, as is provided by R.S. 34:1121(C), the Louisiana Public Service Commission shall constitute the commission.
(2) Within ninety days following the certification of the issue to the Louisiana Public Service Commission, it shall hold hearings where interested members of the fee commission may file and present their evidence and arguments, at the same time, relative to the issue. The Louisiana Public Service Commission shall render a full and final decision relative to the issue prior to the lapse of twelve months from its receipt of certification of the issue.
[4] Article IV, § 21(B) of the Louisiana Constitution vests the LPSC with the power to "have such ... regulatory authority as provided by law."
[5] In the instant case, this first condition precedent to the LPSC's constituting the Fee Commission has not been contested.
[6] They further suggest that, in the meantime, remedies are available in antitrust and for violation of the code of ethics. This argument is not persuasive.
[7] The petition which instituted this proceeding before the LPSC reflects the petitioner was LCPI. Accompanying the filing was a sworn verification executed and signed by Captain Malcolm Gillis, a pilot member of the Fee Commission. The verification identified Gillis as a commissioner and stated that he certified, in writing, pursuant to R.S. 34:1121(C) and 1122(D) the issue to the LPSC.
[8] Before the creation of the fee commissions, the legislature regulated pilotage fees. See repealed provisions in La.Rev.Stat. 34:997-999. However, in 1968, the legislature disburdened itself of this authority and created pilot fee commissions, giving these commissions the authority to fix rates and fees for pilot services. La.Rev.Stat. 34:1121; Hayden, 707 So.2d at 5.